BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division
JAMES G. TOUHEY, JR.
Director, Torts Branch
IRINA M. MAJUMDAR
D.C. Bar No. 252757
Trial Attorney
E-mail: irina.m.majumdar@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 598-5403
Facsimile: (202) 616-5200

Attorneys for the United States of America

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

M.A.N.H., individually and as parent and next friend of his minor child, E.B.N.A.,

　　　　　Plaintiffs,

　　　v.

United States of America,

　　　　　Defendant.

Case No. 5:23-cv-00372-JGB-KK

**UNITED STATES' NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

 **[Proposed] Order**

Hearing Date: August 21, 2023
Hearing Time: 9:00 a.m.
Ctrm: 1
Hon. Jesus G. Bernal

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT . xiv

MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 1

I.    INTRODUCTION ......................................................................... 1

II.   BACKGROUND .......................................................................... 1

   A.   Statutory Framework for Noncitizens Entering the United States .............. 1

   B.   Statutory Framework for Immigration Custody of Unaccompanied
Minors…………………………………………………………………….2

   C.   Flores Agreement Requirements............................................................. 3

   D.   Executive Branch Directives Regarding Immigration Enforcement........... 4

   E.   Detention, Separation, and Reunification of Plaintiffs ............................. 5

   F.   Plaintiffs' Complaint ........................................................................... 6

III.  LEGAL STANDARDS.................................................................. 6

IV.  ARGUMENT................................................................................. 7

   A.   Sovereign Immunity Has Not Been Waived For Plaintiffs' Claims
Challenging Policy Decisions .................................................................. 7

     1.   Plaintiffs' Claims are Impermissible Institutional or Systemic Tort
Claims.................................................................................................. 8

     2.   Plaintiffs' Claims Are Barred By The Discretionary Function
Exception ............................................................................................ 11

       a.   Legal Standard for Discretionary Function Exception Analysis ....... 11

       b.   The DFE's Application to Plaintiffs' Claims.................................... 13

       c.   Conditions of Confinement ............................................................. 17

       d. Plaintiffs' Assertions of Unconstitutional Conduct Do Not Preclude
Application of the DFE in this Case ...................................................... 18

i

3.    Exception for Actions Taken While Reasonably Executing the Law ... 21

4.    No Private Person Analogue ................................................................. 23

5.    Independent Contractor Exception ....................................................... 24

6.    Other Exceptions ................................................................................... 26

A.    Plaintiffs Have Failed to State a Claim Under Rule 12(b)(6) .................. 27

1.    The United States' Conduct was Privileged ......................................... 27

2.    Pleading Deficiencies .......................................................................... 29

a.    Intentional Infliction of Emotional Distress ..................................... 29

b.    Negligent Infliction of Emotional Distress ....................................... 30

c.    Abuse of Process ................................................................................ 30

d.    Negligence ......................................................................................... 31

V.    CONCLUSION ..................................................................................................... 33

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**Statutes:**

6 U.S.C. § 279 .................................................................. 2, 3, 17

6 U.S.C. § 279 (a) ..................................................................... 2

6 U.S.C. § 279 (b)(1)(A) ............................................................. 2

6 U.S.C. § 279 (b)(1)(C) ............................................................. 2

6 U.S.C. § 279 (g)(2) ................................................................. 2

8 U.S.C. §1182 (d)(5) ................................................................. 2

8 U.S.C. § 1225(a)(1) ................................................................. 1

8 U.S.C. § 1225 (a)(3) ................................................................ 1

8 U.S.C. § 1225 (b) ............................................................... 1, 2

8 U.S.C. § 1226(a)(2) ................................................................. 2

8 U.S.C. § 1231 ................................................................... 2, 14

8 U.S.C. § 1232 ............................................................. 2, 3, 5, 23

8 U.S.C. § 1325 ................................................................. 1, 4, 5

28 U.S.C. § 1346 ............................................................. 8, 23, 27

28 U.S.C. § 2674 ..................................................................... 23

28 U.S.C. § 2680 ..................................................... 11, 13, 21, 26

42 U.S.C. § 1983 ................................................................... 9, 10

**Cases:**

*A.P.F. v. United States*,
    492 F. Supp. 3d 989 (D. Ariz. 2020) .................................... 20

*Accardi v. United States*,
    435 F.2d 1239 (3d Cir. 1970) ............................................... 22

*Adler v. Fed. Republic of Nigeria*,
    107 F.3d 720 (9th Cir. 1997) ................................................. 6

*Aguilar v. ICE*,
    510 F.3d 1 (1st Cir. 2007) .................................................... 30

*Antonelli v. Crow*,
   No. CIV. 08-261, 2012 WL 4215024 (E.D. Ky. Sept. 19, 2012) ..................... 18

*B.A.D.J. v. United States*,
   No. CV-21-00215, 2022 WL 11631016 (D. Ariz. Sept. 30, 2022) .................... 9

*Baie v. Secretary of Def.*,
   784 F.2d 1375 (9th Cir. 1986) ........................................................... 17

*Bailor v. Salvation Army*,
   51 F.3d 678 (7th Cir. 1995) ............................................................. 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................... 6

*Berkovitz v. United States*,
   486 U.S. 531 (1988) ..................................................................... 11

*Bhuiyan v. United States*,
   772 F. App'x 564 (9th Cir. 2019) ...................................................... 24

*Bivens v. Six Unknown Fed. Bureau of Narcotics Agents*,
   403 U.S. 388 (1971) ..................................................................... 10

*Blackstock v. Tatum*,
   396 S.W.2d 463 (Tex. Civ. App. 1965) ................................................ 31

*Blanco Ayala v. United States*,
   982 F.3d 209 (4th Cir. 2020) ........................................................... 14

*Bob Davis Packing Co. v. United States*,
   443 F. Supp. 589 (W.D. Tex. 1977) ................................................... 22

*Borquez v. United States*,
   773 F.2d 1050 (9th Cir. 1985) ......................................................... 22

*Bossin v. Towber*,
   894 S.W.2d 25 (Tex. App.1994, writ denied) ........................................ 31

*Boyles v. Kerr*,
   855 S.W.2d 593 (Tex. 1993) ........................................................... 30

*Bultema v. United States*,
    359 F.3d 379 (6th Cir. 2004) .......................................................... 18

*Bunikyte v. Chertoff*,
    No. A-07-CA-16A, 2007 WL 1074070 (W.D. Tex. Apr. 9, 2007) .............. 4, 16

*Butz v. Economou*,
    438 U.S. 478 (1978) ................................................................ 20, 21

*Caban v. United States*
    728 F.2d 68 (2d Cir. 1984) .......................................................... 29

*Chadd v. United States*,
    794 F.3d 1104 (9th Cir. 2015) ...................................................... 11

*Chen v. United States*,
    854 F.2d 622 (2d Cir. 1988) ........................................................ 23

*Clark v. Suarez Martinez*,
    543 U.S. 371 (2005) .................................................................. 14

*Cohen v. United States*,
    151 F.3d 1338 (11th Cir. 1998) .................................................... 15

*Comm. of Cent. Am. Refugees v. I.N.S.*,
    795 F.2d 1434 (9th Cir. 1986) ................................................. 14, 15

*Corr. Servs. Corp. v. Malesko*
    534 U.S. 61 (2001)................................................................... 10

*D. Houston, Inc. v. Love*,
    92 S.W.3d 450 (Tex. 2002) ......................................................... 32

*D.B. v. Preston*,
    119 F. Supp. 3d 472 (E.D. Va. 2015) .............................................. 17

*Dalehite v. United States*,
    346 U.S. 15 (1953) ................................................................... 22

*Davila v. United States*,
    713 F.3d 248 (5th Cir. 2013) ....................................................... 28

*DaVinci Aircraft, Inc. v. United States*,
   926 F.3d 1117 (9th Cir. 2019) ..................................................... 26-27

*Davis v. Carlson*,
   837 F.2d 1318 (5th Cir. 1988) ......................................................... 33

*Denson v. United States*,
   574 F.3d 1318 (11th Cir. 2009) ....................................................... 20

*Dillard Dep't Stores v. Silva*,
   106 S.W.3d 789 (Tex. App. 2003, pet. granted) ............................... 30

*Dillard Dep't Stores v. Silva*,
   148 S.W.3d 370 (Tex. 2004) ........................................................... 30

*Dupree v. United States*,
   247 F.2d 819 (3d Cir. 1957) ........................................................... 22

*Elgamal v. Bernacke*,
   714 F. App'x 741 (9th Cir. 2018) ................................................... 24

*Elgamal v. United States*,
   No. CV-13-00867, 2015 WL 13648070 (D. Ariz. July 8, 2015) .................... 24

*F.R. v. United States*
   No. CV-21-00339, 2022 WL 2905040 at *3 (D. Ariz. July 22, 2022) ........... 8-9

*Fazaga v. Fed. Bureau of Investigation*,
   916 F.3d 1202 (9th Cir. 2019) ........................................................ 21

*Fazaga v. Fed. Bureau of Investigation*,
   965 F.3d 1015 (9th Cir. 2020) ........................................................ 19

*FDIC v. Citizens Bank & Tr. Co. of Park Ridge, Ill.*,
   592 F.2d 364 (7th Cir. 1979) .......................................................... 22

*FDIC v. Meyer*,
   510 U.S. 471 (1994) ......................................................... 7, 10, 18, 32

*Fisher Bros. Sales, Inc. v. United States*,
   46 F.3d 279 (3d Cir. 1995) ............................................................ 17

*Flores v. Lynch*,
  828 F.3d 898 (9th Cir. 2016) ................................................................. 3, 4, 16

*Flores v. Rosen*,
  984 F.3d 720 (9th Cir. 2020) ........................................................................... 3

*Franklin Sav. Corp. v. United States*,
  180 F.3d 1124 (10th Cir. 1999) ...................................................................... 13

*Gandarillas-Zambrana v. BIA*,
  44 F.3d 1251 (4th Cir. 1995) ..................................................................... 14, 16

*Garza v. United States*,
  161 F. App'x 341 (5th Cir. 2005) ................................................................... 19

*Garza v. United States*,
  881 F. Supp. 1103 (S.D. Tex. 1995) .......................................................... 28, 31

*GATX/Airlog Co. v. United States*,
  286 F.3d 1168 (9th Cir. 2002) ....................................................................... 12

*Gonzalez v. United States*,
  814 F.3d 1022 (9th Cir. 2016) ................................................................... 7, 13

*Grost v. United States*,
  No. EP-13-CV-158-KC, 2014 U.S. Dist. LEXIS 61608 (W.D. Tex. May 4, 2014)
  ...................................................................................................................... 32

*GTE Sw., Inc. v. Bruce*,
  998 S.W.2d 605 (Tex. 1999) .......................................................................... 29

*Halverson v. United States*,
  972 F.2d 654 (5th Cir. 1992) ......................................................................... 27

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) ...................................................................................... 20

*Harrison v. Fed. Bureau of Prisons*,
  464 F. Supp. 2d 552 (E.D. Va. 2006) ............................................................. 18

*Hernandez v. United States*,
  No. 1:17-cv-00087, 2018 WL 4103015 (S.D. Tex. July 2, 2018) .................... 28

vii

*Hinojosa v. City of Terrell, Tex.*,
  834 F.2d 1223 (5th Cir. 1988) ......................................................... 28

*Hunt v. Baldwin*,
  68 S.W.3d 117 (Tex. App. 2001, no pet.) .................................. 30, 31

*Hydrogen Tech. Corp. v. United States*,
  831 F.2d 1155 & n.5 (1st Cir. 1987) ............................................. 22

*In re Consol. U.S. Atmospheric Testing Litig.*,
  820 F.2d 982 (9th Cir. 1987) ........................................................ 26

*In re FEMA Trailer Formaldehyde Product Liability Litigation*,
  713 F.3d 807 (5th Cir. 2013) ........................................................ 26

*J.F.G. v. Hott*,
  921 F.3d 204 (4th Cir. 2019) ........................................................ 19

*Kelly v. United States*,
  241 F.3d 755 (9th Cir. 2001) ........................................................ 11

*Kennewick Irr. Dist. v. United States*,
  880 F.2d 1018 (9th Cir. 1989) ...................................................... 12

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ....................................................................... 6

*Kristensen v. United States*,
  993 F.3d 363 (5th Cir. 2021) ........................................................ 32

*Laird v. Nelms*,
  406 U.S. 797 (1972) ....................................................................... 8

*Lam v. United States*,
  979 F.3d 665 (9th Cir. 2020) .................................................. 12, 13

*Lee v. United States*,
  No. CV1908051, 2020 WL 6573258 (D. Ariz. Sept. 18, 2020) ....................... 8

*Lehman v. Nakshian*,
  453 U.S. 156 (1981) ....................................................................... 7

viii

*Lineberry v. United States,*
    No. 3:08-CV-0597, 2009 WL 763052 (N.D. Tex. Mar. 23, 2009) ................... 18

*Lipsey v. United States,*
    879 F.3d 249 (7th Cir. 2018) ........................................................... 15

*Liranzo v. United States,*
    690 F.3d 78 (2d Cir. 2012) ............................................................. 23

*Marchiona v. United States,*
    No. 821CV01476, 2023 WL 2558537 (C.D. Cal. Jan. 26, 2023) .............. 11, 12

*Mazur v. United States,*
    957 F. Supp. 1041 (N.D. Ill. 1997) ................................................... 24

*McElroy v. United States,*
    861 F. Supp. 585 (W.D. Tex. 1994) .................................................. 28

*Meier v. United States,*
    No. C 05-04404, 2006 WL 3798160 (N.D. Cal. Dec, 22, 2006) ...................... 8

*Mendiondo v. Centinela Hosp. Med. Ctr.,*
    521 F.3d 1097 (9th Cir. 2008) ......................................................... 27

*Miller Harness Co. v. United States,*
    241 F.2d 781 (2d Cir. 1957) ........................................................... 26

*Mirmehdi v. United States,*
    689 F.3d 975 (9th Cir. 2012) .......................................................... 15

*Monell v. New York City Dept. of Social Services,*
    436 U.S. 658 (1978) ...................................................................... 9

*Ms. L v. ICE,*
    302 F. Supp. 3d 1149 (S.D. Cal. 2018) ............................................. 20

*Mundy v. United States,*
    983 F.2d 950 (9th Cir. 1993) ........................................................... 8

*Murillo v. United States Dep't of Justice,*
    No. CV 21-00425-TUC-CKJ, 2022 WL 16745333 (D. Ariz. Nov. 7, 2022) .... 15

ix

*Nurse v. United States*,
   226 F.3d 996 (9th Cir. 2000) .......................................................... 12, 13, 19, 21

*Ouellette v. Beaupre*,
   977 F.3d 127 (1st Cir. 2020) ................................................................. 9

*Owen v. City of Independence*,
   445 U.S. 622 (1980) ........................................................................ 10

*Payne-Barahona v. Gonzalez*,
   474 F.3d 1 & n.1 (1st Cir. 2007) ................................................... 20, 30

*Pembaur v. City of Cincinnati*,
   475 U.S. 469 (1986) ........................................................................ 10

*Peña Arita v. United States*,
   470 F. Supp. 3d 663- 92 (S.D. Tex. 2020) ...................................... 16, 18

*Porter v. United States*,
   473 F.2d 1329 (5th Cir. 1973) .......................................................... 22

*Powell v. United States*,
   233 F.2d 851 (10th Cir. 1956) .......................................................... 22

*Quicksilver Res. Inc. v. Eagle Drilling, LLC*,
   792 F. Supp. 2d 948 (S.D. Tex. 2011) .............................................. 27

*Rathod v. Barr*,
   No. 1:20-cv-161, 2020 WL 1492790 (W.D. La. Mar. 5, 2020) ...................... 33

*Reed ex rel. Allen v. U.S. Dep't of Interior*,
   231 F.3d 501 (9th Cir. 2000) ........................................................... 11

*Reynolds v. United States*,
   549 F.3d 1108 (7th Cir. 2008) .......................................................... 13

*Richards v. United States*,
   369 U.S. 1 (1962) ........................................................................... 27

*Routh v. United States*,
   941 F.2d 853 (9th Cir. 1991) ........................................................... 13

x

*Ryan v. ICE*,
    974 F.3d 9 (1st Cir. 2020) ................................................................. 24

*S.E.B.M. v. United States,*
    No. 1:21-cv-00095, 2023 WL 2383784 (D.N.M. Mar. 6, 2023)............ 18, 23, 29

*Sabow v. United States*,
    93 F.3d 1445 (9th Cir. 1996) ........................................................... 11

*Saldana v. United States*,
    248 F.3d 1139 (5th Cir. 2001) ......................................................... 28

*Santana-Rosa v. United States*,
    335 F.3d 39 (1st Cir. 2003) ............................................................. 15

*Sasso v. Milhollan*,
    735 F. Supp. 1045 (S.D. Fla. 1990) ............................................ 14-15, 16

*Sea Air Shuttle Corp. v. United States*,
    112 F.3d 532 (1st Cir. 1997) ........................................................... 24

*Sickman v. United States*,
    184 F.2d 616 (7th Cir. 1950) ........................................................... 22

*Spotts v. United States*,
    613 F.3d 559 (5th Cir. 2010) ........................................................... 32

*St. John v. Pope*,
    901 S.W.2d 420 (Tex. 1995) ........................................................... 32

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ......................................................................... 6

*Teplin v. United States*,
    No. 17-CV-02445, 2018 WL 1471907 (N.D. Cal. Mar. 26, 2018) .................. 12

*Thornhill Pub. Co. v. Gen. Tel. & Elec. Corp.*,
    594 F.2d 730 (9th Cir. 1979) ........................................................... 6

*Tovar v. United States*,
    No. 3:98-CV-1682, 2000 WL 425170 (N.D. Tex. Apr. 18, 2000) .................... 28

*Tripp v. United States*,
    257 F. Supp. 2d 37 (D.D.C. 2003) ....................................................... 32

*United States v. Dominguez-Portillo*,
    No. EP-17-MJ-4409, 2018 WL 315759 (W.D. Tex. Jan. 5, 2018) .............. 4, 16

*United States v. Gaubert*,
    499 U.S. 315 (1991) ................................................................ 11, 20, 21

*United States v. Lopez-Flores*,
    63 F.3d 1468 (9th Cir. 1995) ........................................................... 15

*United States v. Olson*,
    546 U.S. 43 (2005) ....................................................................... 23

*United States v. Orleans*,
    425 U.S. 807 (1976) ..................................................................... 25

*United States v. Varig Airlines*,
    467 U.S. 797 (1984) ..................................................................... 12

*Van Dinh v. Reno*,
    197 F.3d 427 (10th Cir. 1999) ..................................................... 15, 16

*Van Horn v. Chambers*,
    970 S.W.2d 542 (Tex. 1998) ............................................................ 32

*Villafranca v. United States*,
    587 F.3d 257 (5th Cir. 2009) ........................................................... 28

*Villanueva v. United States*,
    708 F. Supp. 2d 960 (D. Ariz. 2009) .................................................. 17

*W.S.R. v. Sessions*,
    318 F. Supp. 3d 1116 (N.D. Ill. 2018) ............................................ 19-20

*Walding v. United States*,
    955 F. Supp. 2d 759 (W.D. Tex. 2013) ............................................... 25

*Westbay Steel, Inc. v. United States*,
    970 F.2d 648 (9th Cir. 1992) ........................................................... 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Whisnant v. United States*,
    400 F.3d 1177 (9th Cir. 2005) .......................................................... 12

*Wong v. Beebe*,
    No. CIV 01 718, 2007 WL 1170621 (D. Or. Apr. 10, 2007) ............................ 26

*Wornick Co. v. Casas*,
    856 S.W.2d 732 (Tex. 1993) .......................................................... 29

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017) .......................................................... 10

**Federal Rules:**

Fed. R. Civ. P. 12 .......................................................... xiv, 6, 27, 32

**Restatements:**

*Restatement (Second) of Torts*
    § 46, comment g .......................................................... 28

**NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT**

PLEASE TAKE NOTICE that, on August 21, 2023 at 9:00 a.m., or as soon thereafter as it may be heard, Defendant The United States of America will, and hereby does, move this Court for an order dismissing the complaint.  This motion will be made in the George E. Brown, Jr. Federal Building and Courthouse before the Honorable Jesus G. Bernal, United States District Judge, located at 3470 Twelfth Street, Riverside, CA 92501, Courtroom 1.

The United States brings the motion pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) on the following grounds:

    1.  Plaintiffs' claims are not cognizable under the Federal Tort Claims Act.

    2.  Plaintiffs have failed to state a claim under Texas state law.

This motion is made upon this Notice, the attached Memorandum of Points and Authorities, and all pleadings, records, and other documents on file with the Court in this action, and upon such oral argument as may be presented at the hearing of this motion.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which was held on June 20, 2023.


Dated: June 28, 2023.                              Respectfully Submitted.


                                          BRIAN M. BOYNTON
                                          Principal Deputy Assistant Attorney General

                                          JAMES G. TOUHEY, JR.
                                          Director, Torts Branch

                                          *s/ Irina M. Majumdar*
                                          IRINA M. MAJUMDAR
                                          Trial Attorney
                                          D.C Bar No. 252757
                                          E-mail: Irina.m.majumdar@usdoj.gov

U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 598-5403

Attorneys for the United States of America

s/ Irina M. Majumdar
IRINA M. MAJUMDAR
Attorney for United States of America

xv

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.   <u>INTRODUCTION</u>

Plaintiffs, a father and daughter from El Salvador, were separated after unlawfully entering the United States in May 2018 due to the implementation of a policy to refer for prosecution adults suspected of illegally entering at the U.S.-Mexico border, including adults travelling with children.   Plaintiffs now seek damages under the Federal Torts Claims Act ("FTCA").   The United States does not defend the wisdom of the policy choices that led to family separations during the previous Administration.   But Congress has not waived the United States' sovereign immunity for the types of claims that Plaintiffs assert in this action, so their claims are barred.   And even if there were a sovereign immunity waiver, Plaintiffs have failed to state a claim upon which relief can be granted for any of the torts they allege. Accordingly, Plaintiffs' claims should be dismissed.

## II.   <u>BACKGROUND</u>

### A. Statutory Framework for Noncitizens Entering the United States

Noncitizens who arrive in the United States, including those who arrive between ports of entry, are considered "applicant[s] for admission" and are "inspected by immigration officers" to determine their admissibility to the United States. 8 U.S.C. §§ 1225(a)(1), (a)(3), (b) (using the statutory term "alien," although this brief will use the term "noncitizen").   When a noncitizen enters the United States between official ports of entry, he or she may be prosecuted for criminal immigration violations, including entering the United States "at any time or place other than as designated by immigration officers" and eluding "examination or inspection by immigration officers." 8 U.S.C. § 1325(a).   Violation of § 1325(a) is a misdemeanor punishable by a fine and imprisonment of up to six months for a first infraction.   *Id.*

1

A person arriving or present in the United States who is deemed inadmissible is also subject to removal from the United States and, as appropriate, detention pending the removal.  8 U.S.C. §§ 1225(b), 1226, 1357.  These provisions apply to both adults and children.  The government has statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."  *Id*. § 1231(g)(1).  In some cases, the Department of Homeland Security ("DHS") may exercise its discretion to release a noncitizen from custody pending a decision on removal.  *E.g.*, *id.* §§ 1182(d)(5), 1226(a)(2).

**B. Statutory Framework for Immigration Custody of Unaccompanied Minors**

Federal immigration law authorizes the government to provide for the custody of children who are present in the United States without lawful immigration status. Specifically, the Office of Refugee Resettlement ("ORR") in the Department of Health and Human Services ("HHS") is charged with "the care and placement of unaccompanied alien children who are in federal custody by reason of their immigration status."  6 U.S.C. §§ 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1).  The term unaccompanied child ("UAC") is defined as a child who: (1) "has no lawful immigration status in the United States," (2) "has not attained 18 years of age," and (3) for whom "there is no parent or legal guardian in the United States" or "no parent or legal guardian in the United States is available to provide care and physical custody."  6 U.S.C. § 279(g)(2).

Under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA") any agency "shall transfer" a child to ORR's custody "not later than 72 hours after determining that such child is an unaccompanied alien child," absent exceptional circumstances.  8 U.S.C. § 1232(b)(3).  ORR seeks to place UACs "in the least restrictive setting that is in the

best interest of the child." *Id.* § 1232(c)(2)(A). But ORR "shall not release such children upon their own recognizance." 6 U.S.C. § 279(2)(B). Rather, once ORR takes custody, it must follow detailed statutory and regulatory provisions before releasing the child to an approved sponsor. 8 U.S.C. § 1232(c)(3). Congress forbids transferring custody of a UAC "unless the Secretary of Health and Human Services makes a determination that the proposed custodian is capable of providing for the child's physical and mental well-being" and that this determination "shall, at a minimum, include verification of the custodian's identity and relationship to the child, if any, as well as an independent finding that the individual has not engaged in any activity that would indicate a potential risk to the child." *Id.* § 1232(c)(3)(A). In some instances, a home study is required. *Id.* § 1232(c)(3)(B).

### C. Flores Agreement Requirements

In 1996, the government entered into a settlement agreement referred to as the "Flores Agreement." *See, e.g.*, *Flores v. Sessions*, No. 85 C 4544 (C.D. Cal. Feb. 2, 2015) ("*Flores I*"). The Flores Agreement "sets out nationwide policy for the detention, release, and treatment of minors" in immigration authorities' custody. *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) ("*Flores II*") (citing Flores Agreement ¶ 9). According to the Ninth Circuit, the Flores Agreement "unambiguously" applies to both unaccompanied minors and minors who are encountered with their parents or guardians. *Id.* at 901. Under the agreement, the government must expeditiously transfer any minor who cannot be released from custody to a non-secure, licensed facility. *Id.* at 902-03 (quoting Flores Agreement ¶ 12). The government must also "make and record the prompt and continuous efforts on its part toward . . . releasing the minor." *Flores v. Rosen*, 984 F.3d 720, 738 (9th Cir. 2020) ("*Flores III*") (quoting Flores Agreement ¶ 14).

Notably, the Flores Agreement applies only to minors. *Flores II*, 828 F.3d at 901. It does not address "the housing of family units and the scope of parental rights for adults apprehended with their children," and it "does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'" *Id.* at 906; *see also United States v. Dominguez-Portillo*, No. EP-17-MJ-4409, 2018 WL 315759, at *9 (W.D. Tex. Jan. 5, 2018) (*Flores* "does not provide that parents are entitled to care for their children if they were simultaneously arrested by immigration authorities"), *aff'd sub nom. United States v. Vasquez-Hernandez*, 924 F.3d 164 (5th Cir. 2019). Nor does the Flores Agreement provide any rights to adult detainees, including any rights of release. *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-15; *Bunikyte v. Chertoff*, No. A-07-CA-16A, 2007 WL 1074070, at *16 (W.D. Tex. Apr. 9, 2007). Although the Flores Agreement gives preference to the release of minors to a parent, this preference "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice." *Flores II*, 828 F.3d at 908.

### D. Executive Branch Directives Regarding Immigration Enforcement

On April 6, 2018, Attorney General Jefferson Sessions issued a memorandum that directed "each United States Attorney's Office along the Southwest Border—to the extent practicable, and in consultation with DHS—to adopt immediately a zero tolerance policy for all offenses referred for prosecution under" 8 U.S.C. § 1325(a), which prohibits unlawful entry into the United States ("the Zero-Tolerance Policy"). On May 4, 2018, DHS Secretary Kirstjen Nielsen approved a policy of referring for prosecution, to the extent practicable, all adults who unlawfully crossed the Southwest border of the United States, including those initially arriving with minors ("the DHS Referral Policy").

Consistent with these directives, DHS began to refer for prosecution increased

numbers of adults—including those traveling with children—who unlawfully entered the United States on the southwest border in violation of § 1325.  Children designated as UACs were transferred to ORR custody, as the TVPRA required.  *See* 8 U.S.C. § 1232(b)(3).

### E. Detention, Separation, and Reunification of Plaintiffs

According to the Complaint, Plaintiffs are a father and daughter (using the pseudonyms M.A.N.H. and E.B.N.A., respectively) who left El Salvador to "seek[] safety and asylum" in the United States.  Compl. ⁋ 1.  Plaintiffs illegally entered the United States on or about May 8, 2018.  They were apprehended by U.S. Border Patrol ("Border Patrol") agents near El Paso, Texas and transported to a nearby Border Patrol station.  Compl. ⁋⁋ 60-62.  After M.A.N.H. and E.B.N.A. were taken into custody, Border Patrol referred M.A.N.H. for prosecution, for violation of 8 U.S.C. § 1325.  Martinez Decl. at Attachment 1.[1]  M.A.N.H. was transferred to U.S. Marshall Service custody and transported to the El Paso County Detention Facility for prosecution.  *Id*. ⁋ 5.  However, due to "time constraints," prosecution was declined by the United States Attorney's Office for the Western District of Texas.  *Id*. ⁋ 6.  M.A.N.H. was then transferred to the custody of U.S. Immigration and Customs Enforcement ("ICE") as a single adult for a custody determination pending removal proceedings.  Compl. ⁋ 19.  He was held in several detention facilities in Texas and New Mexico.  Compl. ⁋ 68.

Based on Border Patrol's decision to refer M.A.N.H. for prosecution for unlawful entry, E.B.N.A. was designated a UAC and transferred to ORR custody.  Compl. ⁋ 84.  E.B.N.A. was placed at Cayuga Centers in New York, New York, an

---

[1]  Due to concerns about Plaintiffs' privacy, the United States is unable to attach the declaration to this motion.  Once it receives properly executed privacy waivers from Plaintiffs, it will submit the declaration.

5

ORR grantee facility.  Compl. ₱ 84-85.  On or about July 22, 2018, E.B.N.A. was discharged from ORR custody and reunited with M.A.N.H.  Compl. ₱ 103.

### F. Plaintiffs' Complaint

Plaintiffs filed this lawsuit against the United States on March 3, 2023. Plaintiffs bring four counts: (1) intentional infliction of emotional distress ("IIED"); (2) negligent infliction of emotional distress ("NIED"); (3) abuse of process; and (4) negligence.  Compl. ₱₱ 111-32.

### III.  <u>LEGAL STANDARDS</u>

Rule 12(b)(1) allows a party to move to dismiss a complaint for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  The court must consider the threshold issue of jurisdiction before addressing a case's merits.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  A plaintiff bears the burden of establishing jurisdiction to survive a motion to dismiss.  *Thornhill Pub. Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  The court may look beyond the complaint's allegations to determine whether subject matter jurisdiction exists.  *Adler v. Fed. Republic of Nigeria,* 107 F.3d 720, 728 (9th Cir. 1997).

Rule 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim.  To survive dismissal, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The factual allegations "must be enough to raise a right to relief above the speculative level" and must be sufficient to "state a claim to relief that is plausible on its face."  *Id*. at 555, 570.  A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

## IV.   __ARGUMENT__

The current Administration has disavowed policies during the prior Administration that resulted in the separations of families.  Nonetheless, Congress has not waived the United States' sovereign immunity with respect to claims arising from those policies.  Plaintiffs' complaint challenges discretionary decisions that are susceptible to policy analysis, including policies regarding law enforcement, immigration, and national security, and it also challenges actions taken by federal employees executing federal immigration statutes and regulations.   Statutory exceptions to the FTCA's general waiver of the United States' sovereign immunity preclude these types of claims, so this case should be dismissed in the first instance due to this Court's lack of subject matter jurisdiction.  Further, Plaintiffs' complaint fails to state a claim upon which relief can be granted, and dismissal is warranted on that ground independently.

### A. Sovereign Immunity Has Not Been Waived For Plaintiffs' Claims Challenging Policy Decisions

The United States, as a sovereign entity, "is immune from suit except insofar as it has specifically and expressly consented to be sued." *Lehman v. Nakshian*, 453 U.S. 156, 160-61 (1981) (quotation omitted).  "[T]he terms of [the government's] consent to be sued in any court define that court's jurisdiction to entertain the suit." *Lehman*, 453 U.S. at 160 (internal quotes and citations omitted).  Absent a specific, express waiver, sovereign immunity bars a suit against the government.  *FDIC v. Meyer*, 510 U.S. 471, 475-76 (1994).

The FTCA is a "limited waiver of the United States' sovereign immunity." *Gonzalez v. United States*, 814 F.3d 1022, 1026 (9th Cir. 2016).  The statute allows suit against the United States when a federal employee acting within the scope of his or her employment causes "injury, loss of property, or personal injury or death."  28

7

U.S.C. § 1346(b)(1).  However, the FTCA's waiver of sovereign immunity is subject to exceptions.  28 U.S.C. § 2680.  When an exception applies, the United States retains sovereign immunity, and the claim must be dismissed.  *Mundy v. United States*, 983 F.2d 950, 952 (9th Cir. 1993).  As discussed below, several exceptions to the FTCA's general waiver of sovereign immunity apply here, any of which precludes Plaintiffs' claims.

### 1. Plaintiffs' Claims are Impermissible Institutional or Systemic Tort Claims

The FTCA's limited waiver of sovereign immunity makes the United States liable only under principles of *respondeat superior* for the negligent or wrongful acts or omissions of "employee[s] of the Government" while acting within the scope of their employment.  *See* 28 U.S.C. § 1346(b)(1); *see also Laird v. Nelms*, 406 U.S. 797, 801 (1972) (FTCA's legislative history "indicates that Congress intended to permit liability  essentially based on the intentionally wrongful or careless conduct of Government employees, for which the Government was to be made liable according to state law under the doctrine of *respondeat superior*").

Thus, a plaintiff suing under the FTCA cannot assert "institutional" or "systemic" claims to hold the United States liable based on the conduct of an agency of the government as a whole.  Rather, a plaintiff must allege tortious acts or omissions by individual federal employees, acting within the scope of their employment, for whom the United States has assumed *respondeat superior* liability under the FTCA.  *See, e.g.*, *Meier v. United States*, No. C 05-04404, 2006 WL 3798160, at *3-4 (N.D. Cal. Dec, 22, 2006) (dismissing claim based on corporate negligence theory), *aff'd*, 310 F. App'x 976 (9th Cir. 2009); *Lee v. United States*, No. CV1908051, 2020 WL 6573258, at *6 (D. Ariz. Sept. 18, 2020) (dismissing claims of "generalized theories of negligence asserted against the staff and employees of federal institutions as a whole" for lack of jurisdiction); *F.R. v. United States*, No.

CV-21-00339, 2022 WL 2905040 at *3 (D. Ariz. July 22, 2022) ("[A] cognizable FTCA claim must be predicated on the tortious misconduct of individual government employees, rather than on alleged wrongdoing by the United States or its agencies writ large."); *B.A.D.J. v. United States*, No. CV-21-00215, 2022 WL 11631016 at *5 (D. Ariz. Sept. 30, 2022) ("To the extent Plaintiffs allege harms resulting from policymaking or agency-wide misconduct, the Court lacks subject matter jurisdiction over those claims.").

Plaintiffs' challenges to the DHS Referral Policy and the DOJ Zero-Tolerance Policy are quintessential claims based on policymaking or agency-wide conduct that are not cognizable under the FTCA. *See* Compl. ¶ 4. The FTCA cannot be used as a vehicle to challenge that policymaking.

Congress has elected not to subject the federal government to monetary damages for policies that cause systemic harm. In 42 U.S.C. § 1983, Congress subjected municipalities to money damages for unconstitutional policies. But section 1983 is the mirror image of the FTCA's waiver of immunity, in that municipalities can be held liable only for unconstitutional actions taken "pursuant to official municipal policy" and not based upon *respondeat superior* principles for the acts or omissions of individual employees. *See Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691 (1978); *Ouellette v. Beaupre*, 977 F.3d 127, 141 (1st Cir. 2020) ("The FTCA, unlike § 1983, '[i]n substance . . . adopts respondeat superior liability for the United States.'") (quoting *Solis- Alarcón v. United States*, 662 F.3d 577, 583 (1st Cir. 2011)). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible. *Monell* reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'

– that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986); *see also Owen v. City of Independence*, 445 U.S. 622, 657 (1980) ("[T]he public will be forced to bear only the costs of injury inflicted by the 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy.'" (quoting *Monell*, 436 U.S. at 694)).  In contrast to the liability of municipal entities under §1983, the federal government cannot be held institutionally liable under the FTCA for official policies, regardless of whether such a policy violates the Constitution.[2]  The United States is aware of no cases finding the federal government liable under the FTCA for high-level policy decisions.

Accordingly, Plaintiffs' claims challenging official agency policymaking cannot be a basis to impose FTCA liability based on principles of *respondeat superior*.  Regardless of how Plaintiffs characterize or label their claims, they indisputably arise out of separations resulting from enforcement action taken pursuant to the DHS Referral Policy.  *See* Compl. ¶ 4.  Therefore, Plaintiffs' claims in their entirety are not cognizable under the FTCA.

---

[2]  Although individual federal officers may be subject to liability in their personal capacities for violating the Constitution under certain circumstances, *see Bivens v. Six Unknown Fed. Bureau of Narcotics Agents*, 403 U.S. 388 (1971), "a *Bivens* action is not a 'proper vehicle for altering an entity's policy.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001)); *see also Meyer*, 510 U.S. at 485 ("The purpose of *Bivens* is to deter *the officer*.").  For this very reason, in *Meyer* the Supreme Court held that constitutional torts were not cognizable under the FTCA and declined to imply a *Bivens* cause of action directly against federal agencies. *See* 510 U.S. at 478, 485; *see also Malesko*, 534 U.S. at 71 ("If deterring the conduct of a policymaking entity was the purpose of *Bivens*, then *Meyer* would have implied a damages remedy against the [FDIC]; it was after all an agency policy that led to Meyer's constitutional deprivation.").

10

## 2. Plaintiffs' Claims Are Barred By The Discretionary Function Exception

### a. Legal Standard for Discretionary Function Exception Analysis

One exception to the FTCA's waiver of sovereign immunity is the discretionary function exception ("DFE"). The DFE bars "[a]ny claim" that is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *see also United States v. Gaubert*, 499 U.S. 315, 325 (1991); *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

The Supreme Court has set forth a two-part test to determine if the DFE applies. *Gaubert*, 499 U.S. at 328-32. Courts must first ask whether the challenged conduct "involve[s] an 'element of judgment or choice,'" as determined by the "'nature of the conduct, rather than the status of the actor.'" *Marchiona v. United States*, No. 821CV01476, 2023 WL 2558537, at *3 (C.D. Cal. Jan. 26, 2023) (quoting *Gaubert*, 499 U.S. at 322); *see also Berkovitz*, 486 U.S. at 536; *Chadd v. United States*, 794 F.3d 1104, 1109 (9th Cir. 2015). The first prong is met unless "'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'" *Sabow v. United States*, 93 F.3d 1445, 1451 (9th Cir. 1996) (quoting *Berkovitz*, 486 U.S. at 536); *see also Kelly v. United States*, 241 F.3d 755, 761 (9th Cir. 2001) ("[A] general regulation or policy . . . does not remove discretion unless it specifically prescribes a course of conduct."); *Reed ex rel. Allen v. U.S. Dep't of Interior*, 231 F.3d 501, 504 (9th Cir. 2000) (since "[n]o federal statute, regulation, or policy require[d] a particular course of action," the agency's actions "could be no other way than by the exercise of discretion").

Thus, where no federal statute, regulation or policy prescribes a specific course of action to follow, the challenged conduct involves an element of judgment. *See*

11

*Berkovitz*, 486 U.S. at 536.  Even if a regulation contains a mandate to do something, if that mandate involves judgment or choice, the discretion element is satisfied.  *See GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174-75 (9th Cir. 2002).  Further, where the policies that inform the conduct at issue allow the exercise of discretion, the agency's acts or failures to act are presumed to be discretionary.  *Lam v. United States*, 979 F.3d 665, 674 (9th Cir. 2020).  Finally, the applicable policies and authorities must be considered in context—"the presence of a few, isolated provisions cast in mandatory language does not transform an otherwise suggestive set of guidelines into binding agency regulations."  *Id.* at 677.

Second, if the conduct involves choice or discretion, courts must next determine whether the judgment of the government employee "'is of the kind that the discretionary function exception was designed to shield.'"  *Marchiona*, 2023 WL 2558537, at *3 (quoting *Gaubert*, 499 U.S. at 322-23).  The DFE is designed to "'prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy' through a tort action"—therefore, courts construe it as "protect[ing] only governmental actions and decisions based on considerations of public policy."  *Teplin v. United States*, No. 17-CV-02445, 2018 WL 1471907, at *4 (N.D. Cal. Mar. 26, 2018); *see also United States v. Varig Airlines*, 467 U.S. 797, 814 (1984).  Thus, the focus of this inquiry is "whether the 'nature of the actions taken,' pursuant to an exercise of discretion, 'are susceptible to policy analysis.'"  *Teplin*, 2018 WL 1471907, at *4 (quoting *Gaubert*, 499 U.S. at 325); *see also Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005); *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000).

The government need not "prove that it considered these factors and made a conscious decision on the basis of them."  *Kennewick Irr. Dist. v. United States*, 880 F.2d 1018, 1028 (9th Cir. 1989).  Indeed, under the second prong, the government

actors' subjective motive is immaterial because "the focus" of the inquiry "is 'not on the agent's subjective intent in exercising the discretion conferred by statute or regulation,' but rather 'on the nature of the actions taken and on whether they are susceptible to policy analysis.'" *Gonzalez*, 814 F.3d at 1027-28; *see also Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1127 (10th Cir. 1999) ("the exception's purpose compels dismissal of any claim whose ultimate resolution would require judicial scrutiny of an official's good faith or subjective decisionmaking"); *id*. at 1140 ("[I]t is sensible to allow judicial inquiry into bad faith and subjective decisionmaking in a few exceptional cases under the APA, but to ban all FTCA suits that necessitate that peculiarly disruptive inquiry … The exception must bar all suits dependent on allegations of subjective bad faith if it is to serve its purposes[.]"); *Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008) (the DFE applies even where there are allegations of "malicious and bad faith conduct" because "subjective intent is irrelevant to [the] analysis").

Where the relevant policies provide for discretion, it must be presumed that the government's actions are grounded in policy when exercising that discretion. *Lam*, 979 F.3d at 681. And the statutory text confirms that the exception applies "whether or not the discretion involved [was] abused" by United States officials. 28 U.S.C. § 2680(a); *Routh v. United States*, 941 F.2d 853, 855 (9th Cir. 1991) ("Negligence is irrelevant to the discretionary function inquiry."); H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10. If both prongs of the *Gaubert* test are met, the DFE applies, the United States retains its sovereign immunity, the Court lacks jurisdiction, and the claim must be dismissed. *Nurse*, 226 F.3d at 1000.

### b.  The DFE's Application to Plaintiffs' Claims

Plaintiffs' claims are based on the decision to refer M.A.N.H. for prosecution for unlawful entry and to detain him pending immigration proceedings, resulting in

1   the separation of M.A.N.H and E.B.N.A.  *See* Compl. ¶¶ 68, 74, 105.  These claims

2   are barred by the discretionary function exception because the challenged decisions

3   involved an element of judgment or choice and were susceptible to policy analysis.

4     The decisions which resulted in M.A.N.H. and E.B.N.A.'s separation are

5   quintessentially discretionary.  To begin, the discretionary function exception plainly

6   applies to decisions relating to the apprehension of noncitizens for unlawful entry and

7   referral for criminal prosecution.  Indeed, discretion "lies at the heart of the DHS law

8   enforcement function."  *Blanco Ayala v. United States*, 982 F.3d 209, 215 (4th Cir.

9   2020).  In exercising this function, DHS agents must "make all the classic judgment

10  calls the discretionary function was meant to exempt from tort liability."  *Id*.

11  Immigration policy involves "vital national interests in law enforcement at the

12  borders," and DHS officers' "decisions in investigating and responding to potential

13  violations of immigration law are infused with public policy considerations."  *Id*. at

14  217.  Accordingly, the decision to apprehend a person and to refer him for criminal

15  prosecution is a discretionary decision that cannot be challenged.

16    The government's decisions surrounding whether and where to detain

17  M.A.N.H. for immigration proceedings were also discretionary and susceptible to

18  policy analysis.  The government has the express statutory authority to "arrange for

19  appropriate places of detention for aliens detained pending removal or a decision on

20  removal." 8 U.S.C. § 1231(g)(1).[3]  "Congress has placed the responsibility of

21  determining where aliens are detained *within the discretion* of the [Secretary]."

22  *Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986)

23  (emphasis added); *see also Gandarillas-Zambrana v. BIA*, 44 F.3d 1251, 1256 (4th

24  Cir. 1995) ("The INS necessarily has the authority to determine the location of

---

25  [3] Following the Homeland Security Act of 2002, many references in the INA to the
    "Attorney General" mean the Secretary of Homeland Security. *See Clark v. Suarez*
26  *Martinez*, 543 U.S. 371, 374 n.1 (2005).

27

28

detention"); *Sasso v. Milhollan*, 735 F. Supp. 1045, 1046 (S.D. Fla. 1990) (Attorney General has discretion over the location of detention); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (recognizing the "Attorney General's discretionary power to transfer aliens from one locale to another, as she deems appropriate").

Decisions relating to noncitizens, including placement and detention, are so "vitally and intricately interwoven with contemporaneous policies [and] so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *United States v. Lopez-Flores*, 63 F.3d 1468, 1474 (9th Cir. 1995) (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952)); *see also Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir. 2012) ("Because the decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the Attorney General and implicates issues of foreign policy, . . . it falls within [the DFE].");  *accord Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018) (placement decisions are susceptible to policy analysis); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) ("[A]ssignment to particular institutions or units . . . must be viewed as falling within the discretionary function exception to the FTCA"); *Cohen v. United States*, 151 F.3d 1338, 1342 (11th Cir. 1998) (decisions where to place prisoners are policy-based decisions protected by the DFE); *Bailor v. Salvation Army*, 51 F.3d 678, 685 (7th Cir. 1995) (decisions whether to detain or release are policy-based decisions protected by the DFE); *Murillo v. United States Dep't of Justice*, No. CV 21-00425-TUC-CKJ, 2022 WL 16745333, at *7 (D. Ariz. Nov. 7, 2022) ("[T]he Ninth Circuit has consistently concluded that actions taken in prisons fall under the discretionary function exception."); *see also Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1440 (9th Cir. 1986) ("Congress has placed the responsibility of determining where aliens are detained within the discretion of the Attorney General [now DHS

Secretary]."); *Gandarillas-Zambrana*, 44 F.3d at 1256 ("The INS [now DHS] necessarily has the authority to determine the location of detention of an alien in deportation proceedings . . . and therefore, to transfer aliens from one detention center to another."); *Sasso* 735 F. Supp. at 1046 (finding that the Attorney General [now DHS Secretary] has discretion over the location of detention); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding that the "Attorney General's [now DHS Secretary's] discretionary power to transfer aliens from one locale to another, as she deems appropriate, arises from" statute).

This discretion necessarily encompasses decisions regarding with whom a noncitizen will be detained, including whether an adult and a minor can be detained in the same facility and whether to detain family members together. *Peña Arita v. United States*, 470 F. Supp. 3d 663, 691- 92 (S.D. Tex. 2020) (decisions by DHS to separate family members are protected by DFE). Although the Flores Agreement contains some requirements regarding the detention of minors, it does not specifically prescribe any one course of action and therefore does not remove the government's discretion. In particular, the Flores Agreement does not require the release of a parent or mandate that a parent be housed with a child, and indeed it does not apply to parents at all. *Flores II*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-15; *Bunikyte*, 2007 WL 1074070, at *16.

Here, Plaintiffs cite no statute, regulation, or policy that prescribed a specific course of action that the government was required to take in connection with M.A.N.H.'s referral for prosecution and immigration detention. Instead, the challenged decisions were the result of the exercise of discretion, and were also susceptible to policy analysis. Accordingly, the exercise of the government's statutory authority regarding whether and where to detain M.A.N.H. for immigration proceedings is protected by the discretionary function exception.

16

The discretionary function exception also covers Border Patrol's determination that E.B.NA. was an "unaccompanied alien child" within the meaning of the TVPRA. *See* 6 U.S.C. § 279(g)(2).  Whether a parent is "available to provide care and physical custody" is a policy question vested in federal officials.  *See D.B. v. Preston*, 119 F. Supp. 3d 472, 482-83 (E.D. Va. 2015) ("Federal agencies are afforded discretion under the statutory scheme when classifying juveniles as unaccompanied alien children."), *aff'd in part and vacated in part*, 826 F.3d 721 (4th Cir. 2016); *see also Baie v. Secretary of Def.*, 784 F.2d 1375, 1377 (9th Cir. 1986) ("interpretation of the statute is a plainly discretionary administrative act the 'nature and quantity' of which Congress intended to shield from liability under the FTCA"); *Villanueva v. United States*, 708 F. Supp. 2d 960, 975 (D. Ariz. 2009) ("An agency's interpretation of its statutes and regulations is protected by the [DFE].").  The DFE accordingly protects the government's determination after M.A.N.H. was referred for prosecution that E.B.N.A be designated unaccompanied and accordingly transferred to the custody of ORR.  *See Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279, 287 (3d Cir. 1995) (holding that a decision is protected by the DFE when it "necessarily reflects the decisionmaker's judgment that it is more desirable to make a decision based on the currently available information than to wait for more complete data or more confirmation of the existing data").

### c.  Conditions of Confinement

To the extent that Plaintiffs challenge the conditions of their confinement, including the temperature and alleged lack of access to hygiene products at the Border Patrol station and while M.A.N.H. was in ICE detention, as well as the frequency of communications after being separated, *see, e.g.*, Compl. ⁋⁋ 63, 69, 71, 82, 93-94, those claims are also barred by the DFE.  Courts have repeatedly held that claims based on acts or omissions relating to conditions of confinement are barred by the

DFE because they involve discretionary decisions susceptible to policy considerations.  For example, in *Peña Arita*, the court rejected the contention that transfer decisions including where and how to house detainees or provide medical care were "nondiscretionary," finding that government decision-making regarding conditions of confinement was "susceptible to policy analysis" and that the court "must generally defer to the expertise of prison officials and is not to substitute its judgment for the consideration of such officials."  470 F. Supp. 3d at 691; *see also Antonelli v. Crow*, No. CIV. 08-261, 2012 WL 4215024, at *3 (E.D. Ky. Sept. 19, 2012) (collecting cases in which myriad conditions of confinement claims, including claims based on temperature and crowding, were barred by DFE); *Lineberry v. United States*, No. 3:08-CV-0597, 2009 WL 763052, at *6 (N.D. Tex. Mar. 23, 2009) (DFE bars "allegation of negligent overcrowding"); *Bultema v. United States*, 359 F.3d 379, 384 (6th Cir. 2004) (decision not to provide bed rails susceptible to policy considerations); *Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 559 (E.D. Va. 2006) (BOP's provision of telephone services is "a matter committed to its discretion that will not be second-guessed through an FTCA claim"); *S.E.B.M. v. United States*, No. 1:21-cv-00095, 2023 WL 2383784, at *16 (D.N.M. Mar. 6, 2023) ("The *Flores* Agreement provides no time parameters for how long or frequent calls between children and their family members should be.").

### d. Plaintiffs' Assertions of Unconstitutional Conduct Do Not Preclude Application of the DFE in this Case

A plaintiff cannot circumvent the DFE simply by alleging a violation of a constitutional right.  Congress did not create the FTCA to address constitutional violations, but rather to address violations of state tort law committed by federal employees.  *See Meyer*, 510 U.S. at 477 (recognizing that "§ 1346(b) does not provide a cause of action for" a "constitutional tort claim").  In *Gaubert*, the Supreme Court

held that, where "a federal statute, policy, or regulation specifically prescribes a course of action for an employee to follow," there is no further discretion to exercise. 499 U.S. at 322.  The Constitution is no different: in some cases, the Constitution may establish such a specific prescription that it removes an official's discretion, but the requirement of specificity applies with the same force whether the prescription is found in the Constitution or a statute.  And in *Nurse*, the Ninth Circuit held that a constitutional violation "may" remove conduct from discretion but expressly left open the question of "the level of specificity with which a constitutional proscription must be articulated to remove the discretion of a federal actor."  226 F.3d at 1002 n.2; *see also Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1065 (9th Cir. 2020) ("[I]f the district court instead determines that Defendants did violate a nondiscretionary federal constitutional . . . directive, the FTCA claims may be able to proceed to that degree."), *rev'd on other grounds*, 142 S. Ct. 1051 (2022); *accord Garza v. United States*, 161 F. App'x 341, 343 (5th Cir. 2005) (holding that Eighth Amendment's prohibition against cruel and unusual punishment did not define a course of action "specific enough to render [DFE] inapplicable").

Here, Plaintiffs do not allege the violation of any constitutional provision with the degree of specificity required by *Gaubert*.  Indeed, Plaintiffs offer no specificity at all, instead simply asserting that "[o]fficials and employees of multiple federal agencies designed, implemented, and carried out Family Separation in direct contravention of Plaintiffs' constitutional rights." Compl. ¶ 5.  Further, while the Constitution may establish in some cases a specific prescription that eliminates a government official's discretion, Plaintiffs also do not allege the violation of a specific Constitutional right that was clearly established at the times relevant to their Complaint.  *See Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210-11 (4th Cir. 2019) (rejecting such a contention); *W.S.R. v. Sessions*, 318 F. Supp. 3d 1116, 1133

19

(N.D. Ill. 2018) (same); *Payne-Barahona v. Gonzalez*, 474 F.3d 1, 2 & n.1 (1st Cir. 2007) (same). *See also Ms. L v. ICE*, 302 F. Supp. 3d 1149, 1159 n.3 (S.D. Cal. 2018) (plaintiffs did not challenge the decision to detain adult noncitizens while in removal proceedings for the "sound reasons" that the law calls for mandatory detention, with parole available in strictly limited circumstances).

Thus, even if the conduct in question were later found unconstitutional, the DFE would still apply here. As the Supreme Court has long recognized, conduct may be discretionary even if it is later determined to have violated the Constitution. The common-law doctrine of official immunity thus applies to the exercise of "discretionary functions" even when conduct violates the Constitution, so long as the constitutional right was not defined sufficiently at the time of the act so that the official should have known the act was unconstitutional. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (discretionary functions shielded from liability insofar as conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"). Whether, in retrospect, the separations at issue here violated such a right has no bearing on the application of the DFE in this case. *See Denson v. United States*, 574 F.3d 1318, 1137-38 (11th Cir. 2009).[4]

Indeed, even before it specifically addressed the qualified immunity standards applicable to federal employees, the Supreme Court in *Butz v. Economou*, 438 U.S. 478 (1978), explicitly recognized that DFE would apply even if alleged conduct might later be held unconstitutional. The Court held that officials sued for violations of

---

[4] In other cases, district courts have held that the DFE is inapplicable because the plaintiffs allege that the Constitution was violated. *E.g.*, *A.P.F. v. United States*, 492 F. Supp. 3d 989, 996 (D. Ariz. 2020). But those cases failed to follow the rule, established in *Gaubert*, that an official loses discretion only if a source of law "specifically prescribes" the course of conduct.

constitutional rights were entitled to qualified, but not absolute immunity.  The Court explained that were it otherwise, the recently recognized *Bivens* remedy would be illusory, and, as relevant here, "no compensation would be available from the Government, for the Tort Claims Act prohibits recovery for injuries stemming from discretionary acts, even when that discretion has been abused."  *Id.* at 505.  *Butz* and subsequent decisions thus leave no doubt that conduct that violates the Constitution may constitute the type of abuse of discretion that falls within the scope of the DFE.

The Ninth Circuit has declined to decide "the level of specificity with which a constitutional proscription must be articulated in order to remove the discretion of a federal actor."  *Nurse*, 226 F.3d at 1002 n.2; *Fazaga v. Fed. Bureau of Investigation*, 916 F.3d 1202, 1251 (9th Cir. 2019) ("[I]f the district court instead determines that Defendants did violate a nondiscretionary federal constitutional . . . directive, the FTCA claims may be able to proceed to that degree."), *rev'd on other grounds*, 142 S. Ct. 1051 (2022).  A court should require the same level of specificity that would be required in determining whether a statute leaves an employee with no discretion to abuse.  In any event, whatever the precise standard, it is not satisfied here.  Plaintiffs have identified nothing in the decisions of the Supreme Court or the Ninth Circuit that removed any official's discretion with respect to any of the categories of asserted actions by "specifically prescrib[ing] a course of action for an employee to follow." *Gaubert*, 499 U.S. at 322.

### 3.  <u>Exception for Actions Taken While Reasonably Executing the Law</u>

Plaintiffs' claim regarding the decision to transfer E.B.N.A. to ORR custody is also independently precluded because the FTCA prevents the United States from being held liable for a claim "based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid."  28 U.S.C. § 2680(a).  In other words, if government employees "act pursuant to and in furtherance of regulations," any

resulting harm "is not compensable" under the FTCA. *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957); *Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970) (claim based on "enforcement of 'rules and regulations'" barred by § 2680(a)).

The exception "bars tests by tort action of the legality of statutes and regulations." *Dalehite v. United States*, 346 U.S. 15, 33 (1953); *see also* H.R. Res. 77-2245, 77th Cong., 2d Sess., at 10 (noting that it was neither "desirable nor intended that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort"); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956) (FTCA does not waive sovereign immunity for claims based on employees' acts "performed under and in furtherance of the regulation . . . even though the regulation may be irregular or ineffective"). The upshot is that when a government employee's actions are authorized by statute or regulation—even if that statute or regulation is later found unconstitutional or invalid—the claim must be dismissed. *See Borquez v. United States*, 773 F.2d 1050, 1052-53 (9th Cir. 1985); *Bob Davis Packing Co. v. United States*, 443 F. Supp. 589, 593 (W.D. Tex. 1977), aff'd 584, F.2d 116 (5th Cir. 1978); *Sickman v. United States*, 184 F.2d 616, 619 (7th Cir. 1950); *FDIC v. Citizens Bank & Tr. Co. of Park Ridge, Ill.*, 592 F.2d 364, 366 (7th Cir. 1979); *Hydrogen Tech. Corp. v. United States*, 831 F.2d 1155, 1160-61 & n.5 (1st Cir. 1987) (exception barred claim that FBI destroyed owner's prototype by dismantling it during criminal investigation); *Porter v. United States*, 473 F.2d 1329, 1337 (5th Cir. 1973) (exception barred property damage claim of Lee Harvey Oswald's widow, who alleged that, in carrying out their appointed functions, FBI personnel had stained or discolored documents and personal effects by using chemical treatment during investigation into Kennedy assassination).

Here, the United States is required to "transfer the custody" of children to the care of ORR "not later than 72 hours after" determining that there is no parent

available to provide care and physical custody absent exceptional circumstances.  8 U.S.C. § 1232(b)(3).  Border Patrol determined that E.B.N.A. was a UAC on account of its discretionary decision to refer M.A.N.H. for prosecution and his transfer to criminal custody for prosecution.  Compl. ¶¶ 64, 69, 71, 74; *see S.E.B.M. v. United States*, 2023 WL 2383784, at *38 ("The act of charging, prosecuting, and jailing S.E.B.M's father made S.E.B.M. a UAC which in turn required her to be cared for elsewhere.").  The TVPRA then required that E.B.N.A. be transferred to ORR custody, and the enforcement of that statutory command—resulting in the pair's separation—cannot form the basis of an FTCA claim.

### 4.  No Private Person Analogue

Plaintiffs' claims must also be dismissed because the challenged government actions have no private-person analogue.  The FTCA's waiver of sovereign immunity is limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  The statute authorizes tort recovery against the United States only "in the same manner and to the same extent as a private individual under like circumstances."  *Id*. § 2674.  The FTCA does not waive sovereign immunity for claims against the United States based on governmental action "of the type that private persons could not engage in and hence could not be liable under local law."  *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) (quotation omitted).

The FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA [even] in the performance of activities which private persons do not perform." *United States v. Olson*, 546 U.S. 43, 46 (2005) (quotation omitted); *Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir. 2012).  Though the private analogue need not be exact, a plaintiff must offer "a persuasive analogy" showing that the government actor

23

would be subject to liability under state law if a private person. *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992).

Because only the federal government has the authority to enforce federal criminal and immigration laws and make determinations concerning detention, there is no private person analogue that could support a claim under the FTCA. The alleged harms here stem from the government's decision to enforce federal immigration laws and to hold a parent in custody pending prosecution and immigration proceedings, resulting in his child's placement in the care and custody of ORR. The United States has not waived its sovereign immunity for such decisions to enforce federal law, and the decisions have no private-person counterpart. *E.g.*, *Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 537 (1st Cir. 1997) (decision regarding whether to take enforcement action under federal law was not conduct for which private individual could be held liable and thus did not give rise to FTCA action); *Ryan v. ICE*, 974 F.3d 9, 26 (1st Cir. 2020) ("Controlling immigration and the presence of noncitizens within the country are duties and powers vested exclusively in the sovereign."); *Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018) ("because no private person could be sued for anything sufficiently analogous to the negligent denial of an immigration status adjustment application, that claim must be dismissed as well"); *Elgamal v. United States*, No. CV-13-00867, 2015 WL 13648070, at *5 (D. Ariz. July 8, 2015) (recognizing that "immigration matters" are "an inherently governmental function"); *Bhuiyan v. United States*, 772 F. App'x 564, 565 (9th Cir. 2019) ("there is, as a general matter, no private analogue to governmental withdrawal of immigration benefits"); *Mazur v. United States*, 957 F. Supp. 1041, 1042-43 (N.D. Ill. 1997) (regarding naturalization of noncitizens, "only the United States has the power to act" and "there is no private analog[ue] under state law").

**5. <u>Independent Contractor Exception</u>**

24

Plaintiffs allegations that E.B.N.A. was not provided adequate and timely medical care and that she "endured neglect" while in foster care are barred by the FTCA's independent contractor's exception. Compl. ℙ 92; *see also* Compl. ℙℙ 88, 90. The FTCA "was never intended . . . to reach employees or agents of all federally funded programs that confer benefits on people." *United States v. Orleans*, 425 U.S. 807, 813 (1976).  It waives sovereign immunity only for tortious conduct of an "employee of the Government," and it expressly "excludes 'any contractor with the United States.'"  *Id.* (quoting 28 U.S.C. § 2671).  The FTCA thus preserves sovereign immunity for torts committed by government contractors or their employees.  *Id.* Plaintiffs allege that E.B.N.A. suffered harm while E.B.N.A. was in a foster parent placement through Cayuga Centers.  Compl. ℙ 92.  This Court can take judicial notice that while in foster care, E.B.N.A. was in the custody of a private contractor.  *See Walding v. United States*, 955 F. Supp. 2d 759, 794-95 (W.D. Tex. 2013) (holding that an ORR grantee was an independent contractor).  Plaintiffs do not allege that E.B.N.A.'s foster care parent, or employees of Cayuga Centers, were employees of the United States.  Compl. ℙ 84.  Nor could they credibly do so.  ORR contractors that provide shelter and care for UACs are not employees of the United States within the meaning of the FTCA.  *Walding*, 955 F. Supp. 2d at 791-811 (independent contractor exception barred claim that United States negligently failed to ensure health and safety of minors housed at grantee facility).

Further, Plaintiffs do not allege that ORR negligently selected or supervised Cayuga Centers.  Even if they did, as the *Walding* court noted, the discretionary function exception bars such claims, because the selection of a contractor to provide custody and care of UACs is within ORR's policy-based discretion.  955 F. Supp. 2d at 771-72 ("the ultimate choice of facility for housing unaccompanied alien children is a decision vested with policy considerations").  ORR also has discretion with

25

respect to its supervision of grantees, which involves "policy decisions concerning how to allocate its resources to oversee the facilities and personnel." *Id.* at 783; *see also In re Consol. U.S. Atmospheric Testing Litig.*, 820 F.2d 982, 995 (9th Cir. 1987) (holding DFE barred claim that government negligently supervised contractor's compliance with safety procedures and guidelines).

**6.** **Other Exceptions**

Two other exceptions to the FTCA's waiver of sovereign immunity bar Plaintiffs' allegations. First, Plaintiffs' allegations that officials misled M.A.N.H. into believing that the "United States was not granting asylum to anyone anymore," Compl. ⁋ 61, and that M.A.N.H. was induced to "sign several documents purporting to waive many of his legal rights" based on this misinformation, Compl. ⁋ 70, are barred by the FTCA's misrepresentation exception. The misrepresentation exception, 28 U.S.C. § 2680(h), prohibits claims from proceeding under the FTCA "arising out of" misrepresentation or deceit. *Id.* Accordingly, M.A.N.H.'s claims that he was misled by federal officers cannot proceed. *Miller Harness Co. v. United States*, 241 F.2d 781, 783 (2d Cir. 1957); *In re FEMA Trailer Formaldehyde Product Liability Litigation*, 713 F.3d 807 (5th Cir. 2013) (misrepresentation exception barred claim that FEMA failed to disclose that trailers it used for emergency housing emitted formaldehyde); *Wong v. Beebe*, No. CIV 01 718, 2007 WL 1170621, at *25-27 (D. Or. Apr. 10, 2007) (misrepresentation exception barred noncitizen's claim that INS sent her a deceitful letter to induce her to appear at an INS office), *rev'd on other grounds*, 381 F. App'x 715 (9th Cir. 2010). Second, to the extent that Plaintiffs allege that their personal property, including "passports, [M.A.N.H.'s] phone, and whatever clothing [Plaintiffs] were not then wearing" was never returned to them, *see* Compl. ⁋ 62, such claims are barred by 28 U.S.C § 2680(c), which prohibits claims arising out of the detention of goods. *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117,

1124-25 (9th Cir. 2019); *Halverson v. United States*, 972 F.2d 654, 656 (5th Cir. 1992).

### A. Plaintiffs Have Failed to State a Claim Under Rule 12(b)(6)

Even if this Court were to conclude that it had jurisdiction over Plaintiffs' claims, which it should not, Plaintiffs' claims should still be dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."). Plaintiffs' claims fail to meet the Rule 12(b)(6) pleading standard and must be dismissed for two reasons: (1) the conduct Plaintiffs challenge is privileged under state law and (2) Plaintiffs have failed to state a claim under state law for each of the four counts they have alleged.

### 1. The United States' Conduct was Privileged

The conduct Plaintiffs challenge here — the separation of M.A.N.H. and E.B.N.A. as a result of M.A.N.H.'s referral for prosecution and detention pending immigration proceedings — is privileged under state law and federal immigration statutes. Plaintiffs' claims should be decided under Texas law. The applicable law in an FTCA action is the law of the state where the alleged tortious act or omission occurred. *See* 28 U.S.C. § 1346 (b). The court uses the choice-of-law provisions from that state to determine what substantive law applies. *See Richards v. United States*, 369 U.S. 1, 8-10 (1962). Here, the allegedly tortious acts or omissions that form the basis of Plaintiffs' complaint (i.e. their separation) occurred in Texas. Therefore, Texas's choice of law rules apply — and, because Texas courts look to the state with the most significant relationship in their choice-of-law analysis, the tort law of Texas applies to Plaintiffs' claims. *See Quicksilver Res. Inc. v. Eagle Drilling, LLC*, 792 F. Supp. 2d 948, 951 (S.D. Tex. 2011) (citing *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979)).

In an FTCA action, the United States is entitled to invoke state law privileges. *See Villafranca v. United States*, 587 F.3d 257 (5th Cir. 2009) (Texas's civil privilege defense statute applied in FTCA action alleging assault by federal officer); *McElroy v. United States*, 861 F. Supp. 585 (W.D. Tex. 1994) ("the United States may invoke any defenses available to individual law enforcement officers under Texas law"); *Hernandez v. United States*, No. 1:17-cv-00087, 2018 WL 4103015, at *3-4 (S.D. Tex. July 2, 2018) ("the Government may look to state law privileges as a defense to FTCA claims").  Actions that may otherwise subject a defendant to liability are not tortious if the conduct is privileged.  *Hinojosa v. City of Terrell, Tex.*, 834 F.2d 1223, 1231 (5th Cir. 1988).  Privileges that apply to public officials performing their official functions with legal authority apply equally in FTCA cases.  *Tovar v. United States*, No. 3:98-CV-1682, 2000 WL 425170, at *6-7 (N.D. Tex. Apr. 18, 2000) (dismissing false imprisonment claim and finding that, because federal immigration statutes authorized the challenged conduct, the government's conduct was privileged), *aff'd*, 244 F.3d 135 (5th Cir. 2000); *Davila v. United States*, 713 F.3d 248 (5th Cir. 2013) (finding no FTCA liability because Texas's "civil privilege defense" protects officers who use force when they reasonably believe force is necessary, and finding no liability for false imprisonment because Texas's definition of false imprisonment excludes conduct undertaken under authority of law and a federal statute permitted the actions in question); *Saldana v. United States*, 248 F.3d 1139 (5th Cir. 2001) (same); *Garza v. United States*, 881 F. Supp. 1103 (S.D. Tex. 1995) (alleged assault was privileged because the federal agents were enforcing federal immigration law).

In this context, Border Patrol and ICE agents engaged in privileged conduct while enforcing existing federal criminal and immigration statutory authorities.  *See* Restatement (Second) of Torts § 46, comment g (conduct is privileged when the actor "insist[s] upon his legal rights in a permissible way, even though he is well aware that

such insistence is certain to cause emotional distress"); *see also Caban v. United States* 728 F.2d 68 (2d Cir. 1984) (false imprisonment claim was not actionable because INS's detention of plaintiff pursuant to federal statutory authority was privileged). Here, the challenged conduct—the separation of Plaintiffs—was a direct result of the criminal referral process for M.A.N.H. and his subsequent detention by ICE for immigration proceedings. This law enforcement conduct was carried out pursuant to federal statutory authority. Accordingly, the conduct was privileged, and the United States cannot be held liable. *See S.E.B.M.*, 2023 WL 2383784, at *19 (where government separated minor child from parent, the government's actions "were protected by its privilege to prosecute").

### 2. Pleading Deficiencies

As explained above, Plaintiffs' claims are not cognizable under the FTCA or Texas law. But even if they were, Plaintiffs have also not pleaded facts that could support the essential elements of their claims and their claims should be dismissed for this reason as well.

### a. Intentional Infliction of Emotional Distress

Plaintiffs have failed to state a claim for intentional infliction of emotional distress ("IIED"). Under Texas law, the essential elements of IIED are: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme or outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the plaintiff's resulting emotional distress was severe. *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993); *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999). In *Wornick*, the Texas Supreme Court described the outrageous conduct element as requiring conduct that "goes beyond all possible bounds of decency as to be regarded as atrocious and utterly intolerable in a civilized society." 856 S.W.2d at 734. The court must determine as a matter of law whether the alleged conduct may reasonably be regarded as so extreme and outrageous that it permits recovery. *Id*.

Plaintiffs' IIED claims are primarily based on their separation, which was a direct result of enforcement of federal law.  *See* Compl. ⁋⁋ 112-16.  Plaintiffs' IIED claims must be dismissed because under Texas law, the lawful enforcement of federal law is neither extreme nor outrageous, even when it results in the separation of a parent from his child.  *E.g.*, *Dillard Dep't Stores v. Silva*, 106 S.W.3d 789, 797 (Tex. App. 2003, pet. granted) (where probable cause exists for an arrest, the decision to initiate criminal proceedings "cannot constitute outrageous behavior"), *aff'd in part*, *mod. in part on other grounds*, 148 S.W.3d 370 (Tex. 2004).  Indeed, the risk of interference with the parent-child relationship is inherent to immigration detention. *Aguilar v. ICE*, 510 F.3d 1, 22 (1st Cir. 2007); *Payne-Barahona v. Gonzalez*, 474 F.3d 1, 3 (1st Cir. 2007) (holding the same).

### b.  Negligent Infliction of Emotional Distress

Plaintiffs also claim negligent infliction of emotional distress ("NIED"), stating that federal employees had "a duty not to negligently inflict emotional distress on Plaintiffs." Compl. ⁋ 118.  However, "there is no general duty in Texas not to negligently inflict emotional distress."  *Boyles v. Kerr*, 855 S.W.2d 593, 594 (Tex. 1993).  Accordingly, because Texas state law does not recognize an independent cause of action for NIED, Count II of the Complaint must be dismissed.

### c.  Abuse of Process

Plaintiffs also fail to plead facts supporting the essential elements of their claim for abuse of process.  Abuse of process is the malicious use or misapplication of process to accomplish an ulterior purpose.  *Hunt v. Baldwin*, 68 S.W.3d 117, 129 (Tex. App. 2001, no pet.).  The elements are: (1) the defendant made an illegal, improper, or perverted use of the process, a use neither warranted nor authorized by the process; (2) the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of the process; and (3) damage resulted to the

plaintiff as a result of the illegal act.  *Id.*; *Bossin v. Towber*, 894 S.W.2d 25, 33 (Tex. App.1994, writ denied).  The tort assumes that the original issuance of a legal process was justified, but that the process itself was subsequently used for a purpose for which it was not intended.  *Hunt*, 68 S.W.3d at 130.  The improper purpose "usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." *Blackstock v. Tatum*, 396 S.W.2d 463, 468 (Tex. Civ. App. 1965), no writ history).  When the process is used for the purpose for which it is intended, no abuse of process has occurred.  *Hunt*, 68 S.W.3d at 130.

Plaintiffs have not pleaded facts that any federal employee "made an illegal, improper, or perverted use of [] process, a use neither warranted nor authorized by the process." *Hunt*, 68 S.W.3d at 129.  Instead, they allege the use of the process to pursue criminal and removal proceedings against a noncitizen who entered the United States without inspection.  The allegations in the complaint do not state a claim for abuse of process.

### d.  Negligence

Finally, Plaintiffs' claim of ordinary negligence should also be dismissed. Plaintiffs allege that they suffered "physical, emotional, and economic damages" as a direct and proximate cause of the United States' negligence.  Compl. ¶ 131. However, M.A.N.H. fails to allege that he suffered any physical harm as a result of the United States' negligence, and any alleged "economic damages" stems from emotional harm.  *See* Compl. ¶¶ 105-07.  Because the damages M.A.N.H. has alleged are emotional in nature, "[t]he layering of this general negligence charge on top of the specific claims . . . sounds suspiciously like an impermissible claim for [NIED]," and should be dismissed.  *Garza*, 881 F. Supp. at 1008 (dismissing plaintiffs' claims for NIED and negligence, among others).

Even if M.A.N.H.'s negligence claim is not dismissed as an improper negligent infliction of emotional distress claim, both M.A.N.H. and E.B.N.A.'s claims should be dismissed for failure to identify an applicable duty under Texas law.  To maintain a negligence claim under Texas law, a plaintiff must show "the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach." *Kristensen v. United States*, 993 F.3d 363, 368 (5th Cir. 2021); *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002); *see also Tripp v. United States*, 257 F. Supp. 2d 37, 45 (D.D.C. 2003) ("Unless plaintiff can establish a duty under District law to keep employee records such as security clearance application forms confidential, she cannot state a claim for negligence under the FTCA."); *Grost v. United States*, No. EP-13-CV-158-KC, 2014 U.S. Dist. LEXIS 61608, at *59 (W.D. Tex. May 4, 2014) (holding that Plaintiff failed to state a claim for negligence because Texas did not recognize a duty not to allow a hostile work environment).  This is true even if the Court finds that a sufficient private-person analogue exists for Plaintiffs' claims.  *See*, *e.g.*, *Tripp*, 257 F. Supp. 2d at 45.[5]  Nor does the FTCA's waiver of sovereign immunity extend to claims premised on alleged violations of federal constitutional rights. *Meyer*, 510 U.S. at 477–78; *Spotts v. United States*, 613 F.3d 559, 565 (5th Cir. 2010) ("Constitutional torts, of course, do not provide a proper predicate for an FTCA claim."); *see also* Compl. ¶¶ 74–75. The existence of a duty is a threshold question of law.  *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998); *St. John v. Pope*, 901 S.W.2d 420, 424 (Tex. 1995).

---

[5]  In *Tripp*, the court concluded as part of its analysis that the challenged conduct—the release of information contained on an employment-related form—had an analogous counterpart in the private sector.  *Id.* at 45.  The court still dismissed the plaintiff's negligence claim under Rule 12(b)(6), however, because the plaintiff could not establish a duty under the law of the District of Columbia to keep employee records, such as security clearance application forms, confidential.  *Id.* at 45–48 ("Unless plaintiff can establish a duty under District law to keep employee records such as security clearance application forms confidential, she cannot state a claim for negligence under the FTCA.").

Plaintiffs have not identified any duty under Texas law requiring the government to keep them together.  And indeed, no such duty existed.  *See Rathod v. Barr*, No. 1:20-cv-161, 2020 WL 1492790, at *5 (W.D. La. Mar. 5, 2020) (in habeas matter, noting that a noncitizen "does not have a right to be housed in any particular facility, nor does this court have the authority to order ICE to house [a noncitizen] in any particular facility"); *Davis v. Carlson*, 837 F.2d 1318, 1319 (5th Cir. 1988) (denying mandamus and holding that government has "no clear duty—nor, indeed, any duty" to transfer plaintiff to facility near his wife).  Accordingly, their negligence claims should be dismissed.

## V.    <u>Conclusion</u>

For the foregoing reasons, the United States respectfully requests that this Court dismiss Plaintiffs' claims.

Dated: June 28, 2023.                            Respectfully Submitted.

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JAMES G. TOUHEY, JR.
Director, Torts Branch

*s/ Irina M. Majumdar*
IRINA M. MAJUMDAR
Trial Attorney
D.C Bar No. 252757
E-mail: Irina.m.majumdar@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 598-5403

Attorneys for the United States of America

*s/ Irina M. Majumdar*
IRINA M. MAJUMDAR
Attorney for United States of America

33

1
2
## **Certificate of Compliance [L.R. 11-6.2]**

3        The undersigned, counsel of record for Defendants, certifies that this brief

4 contains 10,507 words, which complies with the complies with the parties' agreement

5 that pending before the Court for approval, that the foregoing memorandum may be

6 up to 35 pages in length.

7

8 Dated: June 28, 2023.                    Respectfully Submitted.

9
10                                         BRIAN M. BOYNTON
                                           Principal Deputy Assistant Attorney General

11                                         JAMES G. TOUHEY, JR.
                                           Director, Torts Branch

12                                         *s/ Irina M. Majumdar*
13                                         IRINA M. MAJUMDAR
                                           Trial Attorney
14                                         D.C Bar No. 252757
                                           E-mail: Irina.m.majumdar@usdoj.gov
15                                         U.S. Department of Justice
                                           Civil Division, Torts Branch
16                                         Benjamin Franklin Station, P.O. Box 888
                                           Washington, DC 20044
17                                         Telephone: (202) 598-5403

18                                         Attorneys for the United States of America

19                                         *s/ Irina M. Majumdar*
                                           IRINA M. MAJUMDAR
20                                         Attorney for United States of America

21
22
23
24
25
26
27                                         34
28