1
2
3
4
5
6

Geoffrey H. Yost (S.B. #159687)
gyost@omm.com
L. Nicole Allan (S.B. #323506)
nallan@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: 415-984-8724

7
8
9
10
11

Wendy Wylegala*
wwylegala@supportkind.org
**KIDS IN NEED OF DEFENSE**
252 West 37th Street, Floor 15
New York, NY 10018
Telephone: 646-970-2913

12
13
14
15

*Attorneys for Plaintiffs*
[*Additional counsel listed on following page*]
[*Admitted pro hac vice*]

16
17

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| M.A.N.H., *individually and as parent and next friend of his minor child*, E.B.N.A., | Case No. 5:23-cv-00372 |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

Taylor Simeone (S.B. #327313)
tsimeone@omm.com
Hye-Jin Kim (S.B. #341948)
jennykim@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone: 213-430-6000

Monsura A. Sirajee (S.B. #320704)
msirajee@omm.com
Emily Murphy*
emurphy@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006
Telephone: 202-383-5151

Esther Araya*
earaya@supportkind.org
**KIDS IN NEED OF DEFENSE**
1411 K St. NW, Suite 200
Washington, DC 20005
Telephone: 202-417-1907

John Travis (S.B. #348813)
jtravis@supportkind.org
**KIDS IN NEED OF DEFENSE**
801 S. Grand Ave, Suite 550
Los Angeles, CA 90017
Telephone: 213-274-0187

*Attorneys for Plaintiffs (cont'd)*

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ..................................................................................... 1
II.    FACTUAL BACKGROUND ..................................................................... 2
III.   LEGAL STANDARDS ............................................................................ 4
IV.    ARGUMENT ........................................................................................... 6
       A.    This Court Has Jurisdiction Over Plaintiffs' Claims ............................. 6
             1.   The Complaint Does Not Allege Systemic or
                  Institutional Torts .......................................................................... 7
             2.   The Discretionary-Function Exception Does Not Apply. ........... 9
                  a.    Government officials have no discretion to violate the
                        Constitution. ........................................................................ 9
                  b.    Plaintiffs allege that government officials violated
                        mandatory, not discretionary, duties. ............................ 12
                  c.    The conduct alleged in the Complaint is not
                        susceptible to policy analysis. ........................................ 13
             3.   The Due-Care Exception Does Not Preclude Any
                  of Plaintiffs' Claims .................................................................... 15
             4.   A "Private Person Analogue" Exists for Plaintiffs'
                  Allegations. ................................................................................. 17
             5.   Plaintiffs' Claims Are Not Barred by the Independent-
                  Contractor Exception. ................................................................. 19
       B.    Plaintiffs Have Sufficiently Alleged Their Claims .............................. 21
             1.   Defendant's Misconduct Was Not Privileged. ......................... 21
             2.   Plaintiffs Have Sufficiently Pleaded Claims for IIED,
                  Abuse of Process, and Negligence ........................................... 24
                  a.    Intentional Infliction of Emotional Distress .................... 24
                  b.    Abuse of Process .............................................................. 26
                  c.    Negligence ......................................................................... 27
                        i.    Plaintiffs have alleged that Marcos suffered
                              economic and non-economic damages. ................ 28
                        ii.   Plaintiffs alleged a number of specific
                              duties that Defendant breached. ........................... 29
V.     CONCLUSION ...................................................................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.F.P. v. United States,*
No. 21-780, 2022 WL 2704570 (E.D. Cal. July 12, 2022) .........................passim

*A.I.I.L. v. Sessions,*
No. CV-19-00481-TUC-JCH, 2022 WL 992543 (D. Ariz. Mar. 31, 2022) .........9

*A.P.F. v. United States,*
492 F. Supp. 3d 989 (D. Ariz. 2020).......................................................16, 20, 21

*Adler v. Fed. Rep. of Nigeria,*
107 F.3d 720 (9th Cir. 1997).................................................................................5

*Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.,*
510 F.3d 1 (1st Cir. 2007) ...................................................................................25

*B.A.D.J. v. United States,*
No. 21-215, 2022 WL 11631016 (D. Ariz. Sept. 30, 2022).......................7, 8, 10

*Berkovitz v. United States,*
486 U.S. 531 (1988) ............................................................................................12

*Bhuiyan v. United States,*
772 F. App'x 564 (9th Cir. 2019).........................................................................19

*Bivens v. Six Unknown Fed. Bureau of Narcotics Agents,*
403 U.S. 388 (1971) ..............................................................................................8

*Borquez v. United States,*
773 F.2d 1050 (9th Cir. 1985)..............................................................................15

*Browning v. Graves,*
152 S.W.2d 515 (Tex. Civ. App. 1941) ...............................................................30

*C.D.A. v. United States,*
No. 21-CV-469, 2023 WL 2666064 (E.D. Pa. Mar. 28, 2023).........14, 23, 25, 26

*C.M. on behalf of D.V. v. United States,*
No. 5:21-cv-0234-JKP-ESC, 2023 WL 3261612 (W.D. Tex. May 4,
2023)...............................................................................................................passim

*C.M. v. United States,*
No. CV-19-05217-PHX-SRB, 2020 WL 1698191 (D. Ariz. Mar.
30, 2020)...............................................................................................9, 13, 16, 30

*Caban v. United States,*
728 F.2d 68 (2d Cir. 1984) ..................................................................................24

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Conrad v. United States*,
   447 F.3d 760 (9th Cir. 2006) ................................................................. 5

*D.A. v. United States*,
   No. EP-22-CV-00295-FM, 2023 WL 2619167 (W.D. Tex. Mar. 23,
   2023) .............................................................................................. passim

*D.J.C.V. v. United States*,
   605 F. Supp. 3d 571 (S.D.N.Y. 2022) ............................................ 6, 14

*Davila v. United States*,
   713 F.3d 248 (5th Cir. 2013) ............................................................. 22

*Davis v. Carlson*,
   837 F.2d 1318 (5th Cir. 1988) ........................................................... 30

*Dillard Dep't Stores, Inc. v. Silva*,
   106 S.W.3d 789 (Tex. App. 2003) ..................................................... 25

*Dugard v. United States*,
   835 F.3d 915 (9th Cir. 2016) ............................................................. 17

*Dupree v. United States*,
   247 F.2d 819 (3d Cir. 1957) .............................................................. 15

*E.L.A. v. United States*,
   No. C20-1524-RAJ, 2023 WL 3456889 (W.D. Wash. May 15, 2023) ............... 9

*Edison v. United States*,
   822 F.3d 510 (9th Cir. 2016) ............................................................. 20

*Elgamal v. Bernacke*,
   714 F. App'x 741 (9th Cir. 2018) ....................................................... 19

*Elgamal v. United States*,
   No. CV-13-00867, 2015 WL 13648070 (D. Ariz. July 8, 2015) ....................... 19

*Elliott v. Methodist Hosp.*,
   54 S.W.3d 789 (Tex. App. 2001) ....................................................... 25

*Elo v. Hurwitz Through Hurwitz*,
   No. 03-18-00776-CV, 2020 WL 1696809 (Tex. App. Apr. 8, 2020) ................. 28

*F.R. v. United States*,
   No. 21-CV-339, 2022 WL 2905040 (D. Ariz. July 22, 2022) ............ 8, 10, 11, 12

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Fuentes-Ortega v. United States*,
   No. 22-CV-00449-PHX-DGC, 2022 WL 16924223 (D. Ariz. Nov.
   14, 2022) ................................................................................................ 10, 18

*Galvin v. Hay*,
   374 F.3d 739 (9th Cir. 2004) ........................................................................ 9, 11

*Garza v. United States*,
   881 F. Supp. 1103 (S.D. Tex. Apr. 4, 1995) ........................................ 22, 27, 29

*Harvey v. United States*,
   No. 14-cv-1787 (PAC), 2017 WL 2954399 (S.D.N.Y. July 10, 2017) ............. 20

*Hatahley v. United States*,
   351 U.S. 173 (1956) ................................................................................ 16, 17

*HCRA of Tex., Inc. v. Johnston*,
   178 S.W.3d 861 (Tex. App. 2005) ...................................................................... 28

*Hernandez v. United States*,
   No. 1:17-CV-00087, 2018 WL 4103015 (S.D. Tex. July 2, 2018) .................... 22

*Hinojosa v. City of Terrell, Tex.*,
   834 F.2d 1223 (5th Cir. 2009) ........................................................................... 22

*Hunt v. Baldwin*,
   68 S.W.3d 117 (Tex. App. 2001) ........................................................................ 26

*Indian Towing Co. v. United States*,
   350 U.S. 61 (1955) ............................................................................................. 18

*Jacinto-Castanon de Nolasco v. U.S. Immigr. & Customs Enf't*,
   319 F. Supp. 3d 491 (D.D.C. 2018) .................................................................. 16

*JW Pharm. Corp. v. Michael Kahn & Prism Pharma Co.*,
   No. 12-CV-01006-JGB-RZX, 2013 WL 12125751 (C.D. Cal. Mar.
   11, 2013) ............................................................................................................... 5

*K.O. by & through E.O. v. United States*,
   No. CV 4:20-12015-TSH, 2023 WL 131411 (D. Mass. Jan. 9, 2023) .............. 14

*Karman Express v. Chubb Indem. Ins. Co.*,
   No. ED-23-CV-207-JGB-SHKX, 2023 WL 4291532 (C.D. Cal.
   May 3, 2023) .......................................................................................................... 5

*Lee v. United States*,
   No. 19-CV-08051, 2020 WL 6573258 (D. Ariz. Sept. 18, 2020) ........................ 8

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Marlys Bear Med. v. United States ex rel. Sec'y of Dep't of Interior*,
  241 F.3d 1208 (9th Cir. 2001) ...............................................................14

*Mazur v. U.S. Immigr. & Naturalization Serv.*,
  957 F. Supp. 1041 (N.D. Ill. 1997)........................................................19

*Meier v. United States*,
  No. 05-CV-4404, 2006 WL 3798160 (N.D. Cal. Dec. 22, 2006) ..........8

*Ms. L. v. U.S. Immigr. & Customs Enf't*,
  302 F. Supp. 3d 1149 (S.D. Cal. 2018) ................................................10

*Mundy v. United States*,
  983 F.2d 950 (9th Cir. 1993) ................................................................21

*Nuñez Euceda v. United States*,
  No. 2:20-CV-10793-VAP-GJSX, 2021 WL 4895748 (C.D. Cal.
  Apr. 27, 2021)..............................................................9, 10, 15, 30

*Nurse v. United States*,
  226 F.3d 996 (9th Cir. 2000) .............................................................9, 11

*Payne-Barahona v. Gonzales*,
  474 F.3d 1 (1st Cir. 2007) ....................................................................25

*Peña Arita v. United States*,
  470 F. Supp. 3d 663 (S.D. Tex. 2020)..............................................10, 13

*Prescott v. United States*,
  973 F.2d 696 (9th Cir. 1992) ........................................................5, 7, 13

*Rathod v. Barr*,
  No. 1:20-cv-161, 2020 WL 1492790 (W.D. La. Mar. 5, 2020) ..........30

*Rhodes v. Prince*,
  No. 3:05-CV-2343-D, 2009 WL 1885620 (N.D. Tex. July 1, 2009).................28

*Rodriguez v. United States*,
  No. 2:22-CV-02845-JLS-AFM, 2022 WL 19237182 (C.D. Cal.
  Dec. 22, 2022) .................................................................................passim

*Rosenbaum v. Washoe Cty.*,
  663 F.3d 1071 (9th Cir. 2011)..............................................................10

*Ruiz ex rel. E.R. v. United States*,
  No. 13-CV-1241 (KAM) (SMG), 2014 WL 4662241 (E.D.N.Y.
  Sept. 18, 2014).....................................................................................14

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Rusheen v. Cohen*,
37 Cal. 4th 1048 (2006) ........................................................................... 27

*S.E.B.M. by and through Felipe v. United States*,
No. 1:21-cv-00095-JHR-LF, 2023 WL 2383784 (D.N.M. Mar. 6, 2023) .......... 22

*Salazar v. Collins*,
255 S.W.3d 191 (Tex. App. 2008) ........................................................... 30

*Saldaña v. United States*,
248 F.3d 1139 (5th Cir. 2001) ................................................................. 22

*SCI Tex. Funeral Servs., Inc. v. Nelson*,
540 S.W.3d 539 (Tex. 2018) .................................................................... 29

*Sea Air Shuttle Corp. v. United States*,
112 F.3d 532 (1st Cir. 1997) .................................................................... 19

*Snyder & Assocs. Acquisitions LLC v. United States*,
859 F.3d 1152 (9th Cir. 2017) .................................................................. 27

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) .................................................................... 5

*Tekle v. United States*,
511 F.3d 839 (9th Cir. 2007) ......................................................... 21, 22, 23

*Terbush v. United States*,
516 F.3d 1125 (9th Cir. 2008) ................................................................. 14

*Twyman v. Twyman*,
855 S.W.2d 619 (Tex. 1993) .................................................................... 24

*United States v. Gaubert*,
499 U.S. 315 (1991) ........................................................................... 9, 12

*Villafranca v. United States*,
587 F.3d 257 (5th Cir. 2009) .............................................................. 22, 23

*Warren v. State*,
614 S.W.3d 441 (Tex. App. 2020) ........................................................... 23

*Welch v. United States*,
409 F.3d 646 (4th Cir. 2005) ................................................................... 15

*Westbay Steel, Inc. v. United States*,
970 F.2d 648 (9th Cir. 1992) ................................................................... 17

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) ................................................................. 5

*Wilbur P.G. v. United States*,
No. 4:21-CV-04457-KAW, 2022 WL 3024319 (N.D. Cal. May 10,
2022) ........................................................................................... 7, 8, 10

*Wornick Co. v. Casas*,
856 S.W.2d 732 (Tex. 1993) .................................................................. 25

*Xi v. Haugen*,
68 F.4th 824 (3d Cir. 2023) ................................................................... 11

**Statutes**

6 U.S.C. § 279(g)(2)(C)(ii) ....................................................................... 16

8 U.S.C. § 1232(b)(3) ......................................................................... 15, 16

28 U.S.C. § 1346(b)(1) ........................................................................ 5, 17

28 U.S.C. § 2674 ...................................................................................... 17

28 U.S.C. § 2680(a) ........................................................................... 15, 16

28 U.S.C. § 2680(c) .................................................................................. 21

28 U.S.C. § 2680(h) ............................................................................ 18, 21

42 U.S.C. § 1983 ........................................................................................ 8

Tex. Penal Code § 9.21 .............................................................................. 22

Tex. Penal Code § 9.22 .............................................................................. 22

Tex. Penal Code § 9.51 .............................................................................. 22

Tex. Penal Code § 9.52 .............................................................................. 22

Tex. Penal Code § 46.03 ............................................................................ 22

Tex. Transp. Code § 546.001 .................................................................... 22

Tex. Transp. Code § 546.002 .................................................................... 22

Tex. Transp. Code § 546.003 .................................................................... 22

Tex. Transp. Code § 546.004 .................................................................... 22

Tex. Transp. Code § 546.005 .................................................................... 22

**Rules**

Fed. R. Civ. P. 12(b)(1) .............................................................................. 4

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Other Authorities**

Restatement (Second) of Torts § 46, cmt. g (2023) ..................................................23

1

## I.  **INTRODUCTION**

2        Father and daughter Marcos and Esteffany[1] fled El Salvador, their country of

3    nationality, in 2018, seeking refuge from threats from MS-13 gang members.

4    Esteffany was eight years old when they arrived in El Paso, Texas. Soon after they

5    arrived, immigration officers told Esteffany to say goodbye to her father and flew

6    her to New York City. They did not tell Marcos where Esteffany would be taken,

7    how long she would be gone, or who would care for her. It was more than a month

8    before the two were permitted any contact whatsoever. After ten weeks apart,

9    Esteffany was reunited with her father. Five years later, neither Marcos nor

10   Esteffany have recovered from their trauma.

11       This is an experience inflicted on countless migrant families by the United

12   States government's intentional and negligent disregard for its own policies and

13   standards of care. Plaintiffs are among the many families seeking damages for this

14   conduct under the Federal Tort Claims Act (FTCA). Defendant moves to dismiss

15   these claims on a long list of grounds, none of which have merit, and some of

16   which are supported by minimal argument or relevant precedent. Dozens of courts

17   have evaluated similar motions—and nearly all of them have rejected the arguments

18   Defendant recycles here.

19       Defendant's arguments fall broadly into two categories. First, Defendant

20   claims that an exception to the FTCA's waiver of sovereign immunity applies.

21   These arguments hinge on the false premise that Plaintiffs are challenging

22   Defendant's decision to detain them and refer Marcos for prosecution. But

23   Plaintiffs do not challenge Defendant's prosecutorial discretion. They challenge

24   Defendant's employees' tortious conduct in separating Marcos and Esteffany and

25   mistreating them during this separation. Contrary to Defendant's arguments, no

26

27       [1] Pursuant to this Court's order granting Plaintiffs' motion to proceed under
pseudonyms, Dkt. 26, Plaintiff M.A.N.H. is referred to as "Marcos" and Plaintiff

28   E.B.N.A. is referred to as "Esteffany."

statute or regulation required this separation and ensuing misconduct. In fact, Plaintiffs have alleged that Defendant's employees violated numerous mandatory standards for the treatment of detained migrants and minors. The conduct alleged here is exactly what the FTCA was enacted to remedy, and this Court has jurisdiction over Plaintiffs' claims.

Second, Defendant moves to dismiss Plaintiffs' claims for intentional infliction of emotional distress (IIED), negligent infliction of emotional distress (NIED), abuse of process, and negligence as insufficiently pleaded. But numerous courts have recognized that family separations, on facts like those alleged here, may constitute extreme and outrageous conduct, an abuse of the immigration-detention process, and a violation of numerous government duties to the migrants and minors in its custody.

This Court should reject Defendant's baseless arguments and deny the Motion.

## II.    FACTUAL BACKGROUND

Marcos and his then eight-year-old daughter Esteffany came to the United States in May 2018 seeking safety and asylum from life-threatening violence in El Salvador. Compl. ¶¶ 1-2. They fled El Salvador after receiving threats from MS-13 gang members because of Marcos's work as a police officer. *Id.* ¶¶ 2, 58. Shortly after entering the United States near El Paso, Texas, Marcos approached a Border Patrol officer and stated that he intended to seek asylum. *Id.* ¶¶ 60-61. Officers took him and Esteffany into custody and held them overnight in a cold room with other migrant families, giving them little to eat or drink. *Id.* ¶¶ 62-63. Esteffany had trouble sleeping over the sound of crying children. *Id.* ¶ 63. The next morning, a Customs and Border Protection (CBP) officer announced that the children would be separated from the adults. *Id.* ¶ 65. Officers provided no information about where they were taking Esteffany, who would take care of her, or when she would be reunited with Marcos. *Id.* ¶¶ 3, 66. Esteffany cried and clung to her father before a

CBP officer took her away. *Id.* ¶¶ 3, 65. Both she and Marcos were terrified, wondering whether they would ever see each other again. *Id.*

Marcos and Esteffany were separated for more than two months. *Id.* ¶ 1. Defendant sent Esteffany to New York City, where she lived in a foster home with seven other separated children and attended daytime programming run by Cayuga Centers, an organization under contract with the Office of Refugee Resettlement (ORR). *Id.* ¶¶ 84-86. Esteffany suffered severe emotional and physical distress during this time, including being hospitalized for several days due to coxsackie virus, Scarlet fever, conjunctivitis, and an ear infection. *Id.* ¶¶ 88, 90. She was so traumatized she often could not eat and became dizzy, weak, dehydrated, and malnourished. *Id.* ¶¶ 87, 89, 92. She lost weight and felt sad every day. *Id.* ¶ 89. Early on she developed head lice, which no one treated. *Id.* ¶ 88.

Meanwhile, the United States held Marcos in a series of facilities in Texas and New Mexico. *Id.* ¶ 68. While the conditions of his detention were often poor, Marcos's separation from Esteffany caused him the greatest distress. *Id.* ¶ 80. For several days after his separation from Esteffany, Department of Homeland Security (DHS) officers provided Marcos no information about where his daughter had been taken or how to contact her. *Id.* ¶ 93. Even after he learned Esteffany's location, Marcos and Esteffany did not speak by telephone for several weeks, and after that, they spoke only six or so times and were often cut off. *Id.* ¶¶ 93-94. During the separation from his daughter, Marcos was frequently unable to eat or sleep. *Id.* ¶ 80. He lost weight and often felt weak. *Id.* He felt depressed, anxious, angry, and desperate. *Id.*

In April 2018, federal officials announced the "Zero Tolerance" policy, which instructed U.S. Attorney's Offices on the southwest border to prosecute unlawful entry wherever practicable. *Id.* ¶ 43. While no statute or regulation required the separation of parents and children when a parent was referred for prosecution, federal officials understood that separations would occur. *Id.* ¶¶ 38, 44.

These officials believed that family separation would deter future migrants, including those lawfully seeking asylum. *Id.* ¶¶ 4-5, 38, 51, 126. Officials and employees of multiple federal agencies separated thousands of families without adequate plans or procedures for tracking the location of the separated children, housing them in appropriate facilities with capacity to meet their needs, ensuring they could regularly communicate with their parents, or reuniting them with their families. *Id.* ¶¶ 5, 45-51. All of this conduct violated established federal policies, regulations, and standards of care. *Id.* ¶¶ 26-36, 113. The policy was terminated by Executive Order in July 2018. *Id.* ¶ 4.

Marcos and Esteffany were finally reunited on or around July 22, 2018. *Id.* ¶ 9. Even after their reunion, both Marcos and Esteffany continued to suffer the effects of the needless trauma inflicted by Defendant's employees' negligent and intentional conduct. *Id.* ¶¶ 10, 105-110. For the first several months after being reunited, Marcos struggled with memories of the separation and felt isolated and helpless. *Id.* ¶ 105. Esteffany would sob and shake whenever Marcos had to leave her side. *Id.* ¶ 106. It took at least three to six months for Marcos to feel comfortable enough leaving Esteffany to find regular work, and even then, he frequently had to miss days when she was too upset for him to leave. *Id.* Esteffany still suffers physical ailments caused by Defendant's separation, including headaches, exhaustion, physical weakness, and intermittent ear pain. *Id.* ¶ 109. She continues to have nightmares about the separation, and Marcos frequently experiences flashbacks. *Id.* ¶¶ 107-08.

## III.   LEGAL STANDARDS

Defendant brings a facial challenge under Federal Rule of Civil Procedure 12(b)(1). A facial 12(b)(1) challenge argues that "the allegations contained in [the] complaint are insufficient on their face to invoke federal jurisdiction" via the Federal Tort Claims Act. *Rodriguez v. United States*, No. 2:22-CV-02845-JLS-AFM, 2022 WL 19237182, at *2 (C.D. Cal. Dec. 22, 2022) (citation omitted). In a

facial 12(b)(1) challenge, "all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."[2] *JW Pharm. Corp. v. Michael Kahn & Prism Pharma Co.*, No. 12-CV-01006-JGB-RZX, 2013 WL 12125751, at *4 (C.D. Cal. Mar. 11, 2013). The "plaintiff bears the burden of persuading the court that it has subject matter jurisdiction under the FTCA's general waiver of immunity," and Defendant bears the burden of proving that an exception applies. *Prescott v. United States*, 973 F.2d 696, 701-02 (9th Cir. 1992).

In evaluating Defendant's Rule 12(b)(6) motion, the Court must also "accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party." *Karman Express v. Chubb Indem. Ins. Co.*, No. ED-23-CV-207-JGB-SHKX, 2023 WL 4291532, at *2 (C.D. Cal. May 3, 2023). A complaint must (1) "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

Under the FTCA, federal courts must apply "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *Conrad v. United States*, 447 F.3d 760, 767 (9th Cir. 2006). Because Marcos and Esteffany were separated in

---

[2] In support of its Motion, Defendant filed a declaration and alleged "copies of I-213s, manifests and the e3 detention transaction log." Dkt. 40-1. Since Defendant did not seek judicial notice of these documents, it presumably believes they are covered by the rule that a "court may look beyond the complaint's allegations to determine whether subject matter jurisdiction exists." Dkt. 38 at 22 (quoting *Adler v. Fed. Rep. of Nigeria*, 107 F.3d 720, 728 (9th Cir. 1997)). But this rule only applies to *factual* 12(b)(1) challenges. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Because Defendant does not "dispute[] the truth of the allegations" that Plaintiffs argue establish jurisdiction, *Rodriguez*, 2022 WL 19237182, at *2 (citation omitted), the Court should disregard these documents and confine its review to the four corners of Plaintiffs' complaint.

Texas, Texas's choice-of-law guidance applies and requires courts to evaluate which state has the "most significant relationship" to the claims. *Rodriguez*, 2022 WL 19237182, at *5 (listing factors) (citation omitted). In *Rodriguez*, as here, the government assumed without analysis that Texas law applied. *Id.*; *see also* Dkt. 38 at 43. The court held that, while the underlying acts occurred in Texas and Georgia, the plaintiffs resided in California and suffered various injuries there, so California had "the most significant relationship to the action." *Rodriguez*, 2022 WL 19237182, at *5-6. This Court should reach the same conclusion, as the alleged acts occurred in Texas, New Mexico, and New York, but Plaintiffs reside in California and continue to suffer injuries there. Compl. ¶¶ 14, 115, 121, 127, 131. For the most part, however, "the torts alleged here are common law and generic." *D.J.C.V. v. United States*, 605 F. Supp. 3d 571, 599 n.14 (S.D.N.Y. 2022). Plaintiffs thus assume for the sake of this motion—without conceding—that Texas law applies, while noting where the analysis would differ under California law. Under the law of either state, the outcome would be the same: Defendant's Motion must be denied. *See Rodriguez*, 2022 WL 19237182, at *5.

## IV.  **ARGUMENT**

## A.  **This Court Has Jurisdiction Over Plaintiffs' Claims**

Defendant makes a litany of arguments for why its conduct is not reachable under the FTCA, all of which fail. Most of the arguments boil down to the idea that in removing an eight-year-old girl from her father and keeping the two apart for more than two months, in substandard conditions and with little to no information about when they would be reunited, the government was merely exercising its undisputed prosecutorial discretion. But Plaintiffs do not challenge Defendant's original decision to detain them nor its purported decision to refer Marcos for prosecution. Plaintiffs challenge everything that came after these decisions, none of which was required by any law or regulation, and much of which in fact *violated* mandatory standards and duties, not to mention Plaintiffs' constitutional rights.

This conduct is exactly the sort of conduct the FTCA was intended to remedy. Because Defendant has waived immunity over Plaintiffs' claims, this Court has subject-matter jurisdiction. *See Prescott*, 973 F.2d at 701.

**1.     The Complaint Does Not Allege Systemic or Institutional Torts.**

"Numerous courts" have rejected Defendant's argument (Dkt. 38 at 24-26) that FTCA claims arising from forced family separation are "systemic claims attempting to hold the United States directly liable under the FTCA, rather than alleging tortious conduct by individual federal employees." *Rodriguez*, 2022 WL 19237182, at *4 (citing *Wilbur P.G. v. United States*, No. 4:21-CV-04457-KAW, 2022 WL 3024319, at *6 (N.D. Cal. May 10, 2022)); *A.F.P. v. United States*, No. 21-780, 2022 WL 2704570, at *18 (E.D. Cal. July 12, 2022); *B.A.D.J. v. United States*, No. 21-215, 2022 WL 11631016, at *5 (D. Ariz. Sept. 30, 2022)). As the *A.F.P.* court explained, "[r]eferences to the 'United States Government' as a whole are not unexpected in an FTCA action, which may only be brought against 'the United States itself.'" 2022 WL 2704570, at *18 (citation omitted).

Plaintiffs have explicitly identified United States officials and employees as tortfeasors. Compl. ¶¶ 112-14, 118-21, 124, 126, 130. Plaintiffs also refer to specific employees by name or function wherever possible. *See, e.g.*, *id.* ¶ 38 (citing February 16, 2017 email from Department of Health and Human Services employee to White House official); *id.* ¶ 40 (describing concerns raised by two named ORR officials); *id.* ¶¶ 43-44 (referring to Attorney General Jeff Sessions and DHS Secretary Kirstjen Nielsen); *id.* ¶ 45 (referring to Deputy Attorney General Rod Rosenstein); *id.* ¶ 51 (citing statements by a DHS Deputy Secretary); *id.* ¶ 52 (citing executive order signed by President Donald Trump). To the extent Plaintiffs did not identify employees involved in the unlawful conduct by name, identifying "every employee, official, and contractor involved in each of the alleged acts . . . is not required at this early stage of litigation when discovery has yet to be conducted." *A.F.P.*, 2022 WL 2704570, at *18; *see also Wilbur P.G.*, 2022 WL 3024319, at *6

(plaintiffs' inability to "name the individual Border Patrol officers who forcibly separated them and detention center employees without the benefit of discovery" was not "fatal to their action, particularly given that none of the [p]laintiffs spoke English at the time of detention and were not provided with adequate (or any) interpretive services"). Courts have consistently rejected Defendant's systemic-tort argument in the face of comparable allegations. *See, e.g.*, *Rodriguez*, 2022 WL 19237182, at *4 (finding jurisdiction over claims based on allegations of "specific conduct by government officials, including the implementation by government employees of government policies themselves crafted by individuals"); *Wilbur P.G.*, 2022 WL 3024319, at *6 (rejecting systemic-tort argument where plaintiffs described employees involved in separation and actions they took).

None of the cases Defendant cites demand a different result here. In *Lee v. United States*, No. 19-CV-08051, 2020 WL 6573258, at *5 (D. Ariz. Sept. 18, 2020), plaintiffs' complaint did not "set forth the alleged acts or omissions of specific federal employees." In *Meier v. United States*, No. 05-CV-4404, 2006 WL 3798160, at *3 (N.D. Cal. Dec. 22, 2006), the court dismissed claims based on the private-person requirement, discussed below, and did not even mention a systemic-tort theory. And the two family-separation decisions Defendant cites *allowed* plaintiffs' claims to proceed insofar as they "allege[d] tortious misconduct by individual government employees." *F.R. v. United States*, No. 21-CV-339, 2022 WL 2905040, at *4 (D. Ariz. July 22, 2022); *see also B.A.D.J.*, 2022 WL 11631016, at *5 ("Plaintiffs also allege tortious acts or omissions of individual federal employees over which [the court] does have subject matter jurisdiction."). [3]

---

[3] The government's reliance on a string of cases comparing liability under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Fed. Bureau of Narcotics Agents*, 403 U.S. 388 (1971), to FTCA *respondeat superior* principles (Dkt. 38 at 25-26) is similarly misplaced because Plaintiffs (1) seek to hold Defendant liable via *respondeat superior* for the actions taken by its employees, and (2) have not named a federal officer as a defendant.

**2.     The Discretionary-Function Exception Does Not Apply.**

Defendant invokes another routinely rejected FTCA exception in family-separation cases: the discretionary-function exception. *See* Dkt. 38 at 27-37. As with the systemic-tort argument, courts have consistently held that this exception does not apply in the family-separation context. *See, e.g.*, *E.L.A. v. United States*, No. C20-1524-RAJ, 2023 WL 3456889, at *4 (W.D. Wash. May 15, 2023); *A.I.I.L. v. Sessions*, No. CV-19-00481-TUC-JCH, 2022 WL 992543, at *4 (D. Ariz. Mar. 31, 2022); *Nuñez Eueceda v. United States*, No. 2:20-CV-10793-VAP-GJSX, 2021 WL 4895748, at *3 (C.D. Cal. Apr. 27, 2021); *C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2020 WL 1698191, at *4 (D. Ariz. Mar. 30, 2020).

To invoke the discretionary-function exception, Defendant must show that its actions (1) "involve an element of judgment or choice," and (2) are "based on considerations of public policy." *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991) (citation omitted). Defendant fails to meet its burden for two reasons. First, government officials have no discretion to violate the Constitution, as Plaintiffs allege they did here. And second, Plaintiffs allege that government officials violated *mandatory*, not discretionary, duties.

a.     *Government officials have no discretion to violate the Constitution.*

The Ninth Circuit has repeatedly held the discretionary-function exception does not apply where the government violates the Constitution because "[f]ederal officials do not possess discretion to violate constitutional rights." *Galvin v. Hay*, 374 F.3d 739, 758 (9th Cir. 2004) (citation omitted); *see also Nurse v. United States*, 226 F.3d 996, 1002 n.2 (9th Cir. 2000) ("[T]he Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply."). Thus, where plaintiffs plausibly allege a constitutional violation, their claims cannot be dismissed on the basis of the discretionary-function exception. *Nurse*, 226 F.3d at 1002 & n.2 (reversing dismissal under discretionary-

1  function exception because "the complaint allege[d] that the policy-making

2  defendants promulgated discriminatory, unconstitutional policies which they had no

3  discretion to create").

4      Plaintiffs allege that their forced separation violated their substantive-due-

5  process right to family integrity. Compl. ¶¶ 35, 113; *see also Rosenbaum v. Washoe*

6  *Cty.*, 663 F.3d 1071, 1079 (9th Cir. 2011) ("The substantive due process right to

7  family integrity . . . is well established."). As one court explained, forced family

8  separation like what Plaintiffs endured "arbitrarily tears at the sacred bond between

9  parent and child[,] . . . 'shocks the conscience' and violates Plaintiffs' constitutional

10  right to family integrity." *Ms. L. v. U.S. Immigr. & Customs Enf't*, 302 F. Supp. 3d

11  1149, 1167 (S.D. Cal. 2018) (citation omitted). Indeed, research suggests that every

12  court to have considered the issue has found that plaintiffs plausibly alleged the

13  family-separation practices at issue here were unconstitutional and thus declined to

14  apply the discretionary-function exception on a motion to dismiss. *See, e.g.*,

15  *Fuentes-Ortega v. United States*, No. 22-CV-00449-PHX-DGC, 2022 WL

16  16924223, at *3 & n.1 (D. Ariz. Nov. 14, 2022) (listing cases); *F.R.*, 2022 WL

17  2905040, at *5; *Wilbur P.G.*, 2022 WL 3024319, at *5; *B.A.D.J.*, 2022 WL

18  11631016, at *3; *Nuñez Eucueda*, 2021 WL 4895748, at *3. In the only case

19  Plaintiffs have found that dismissed family-separation claims under the

20  discretionary-function exception, the plaintiffs did not argue, and the court did not

21  consider, whether the government lacked discretion to separate families in violation

22  of the Constitution. *Peña Arita v. United States*, 470 F. Supp. 3d 663, 686-87 (S.D.

23  Tex. 2020). And unlike in the Ninth Circuit, the *Peña Arita* plaintiffs had the

24  burden of establishing that the exception did not apply. *Id.* at 684.

25      Despite this overwhelming authority to the contrary, Defendant claims that

26  the discretionary-function exception still applies because Plaintiffs did "not allege

27  the violation of a specific Constitutional right that was clearly established." Dkt. 38

28  at 35. This is wrong. Defendant cites to only one paragraph in the Complaint's

introduction, ignoring numerous allegations that Marcos and Esteffany were forcibly separated for months, with minimal contact, in violation of "the fundamental right to family integrity under the U.S. constitution, including, but not limited to, Plaintiffs' rights to due process under the Fourteenth Amendment." Compl. ¶ 113; *see also id.* ¶¶ 35, 37-39. These allegations are more than sufficient to plead a constitutional violation. *See F.R.*, 2022 WL 2905040, at *5 ("To the extent Plaintiffs' claims are based on their separation from each other, Plaintiffs have plausibly alleged the government officials' conduct violated the Constitution, placing this conduct outside the discretionary function exception for pleading purposes.").[4]

The Ninth Circuit has rejected Defendant's argument that the constitutional right at issue must be "clearly established" to bar application of the discretionary-function exception. In *Galvin*, the court held that certain government officials had violated the Constitution by dispersing a public prayer service but that they were entitled to qualified immunity because "the constitutional right violated . . . was not clearly established" at the time of their conduct. 374 F.3d at 756-57. Nevertheless, the court declined to apply the discretionary-function exception, noting that "[f]ederal officials do not possess discretion to violate constitutional rights." *Id.* at 758 (citing *Nurse*, 226 F.3d at 1002 & n.2); *see also Xi v. Haugen*, 68 F.4th 824, 829 (3d Cir. 2023) (holding that "the 'clearly established' threshold"—"applicable to qualified immunity analysis"—"is inapplicable to the discretionary function analysis"). Courts have thus repeatedly rejected this argument in the family-

---

[4] Contrary to Defendant's argument, there is no tension between the idea that government officials have no discretion to violate the Constitution and the fact that Congress created the FTCA "to address violations of state tort law," not "constitutional violations." Dkt. 38 at 34. Plaintiffs have pleaded multiple tort claims. The fact that they have *also* plausibly pleaded a constitutional violation means that Defendant cannot shield itself from liability under the discretionary-function exception—not that Plaintiffs' tort claims are converted into constitutional claims.

separation context. *See, e.g., A.F.P.*, 2022 WL 2704570, at *13 (finding no authority to support defendant's assertion that "FTCA claims must clearly establish the constitutional right in order to evade" the discretionary-function exception); *F.R.*, 2022 WL 2905040, at *5. For these reasons, the Court should ignore the qualified-immunity cases Defendant cites, Dkt. 38 at 35-37, which have nothing to do with the discretionary-function analysis.

                b.    *Plaintiffs allege that government officials violated mandatory, not discretionary, duties.*

      The discretionary-function exception does not apply here because Plaintiffs allege that government officials breached not discretionary, but mandatory duties. The discretionary-function exception "covers only acts that are discretionary in nature." *Gaubert*, 499 U.S. at 322. An act is not discretionary if a "'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" *Id.* (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). Where a government "employee violates [a] mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy." *Id.* at 324.

      Plaintiffs allege that government officials breached multiple mandatory duties, including the *Flores* settlement agreement and various standards required by ORR, CBP, and Immigration and Customs Enforcement (ICE). Compl. ¶¶ 26, 28-34, 113; *see C.M. on behalf of D.V. v. United States*, No. 5:21-cv-0234-JKP-ESC, 2023 WL 3261612, at *7 (W.D. Tex. May 4, 2023) (acknowledging *Flores* agreement "is binding on the Government"). Defendant attempts to reframe the Complaint as questioning "decisions relating to the apprehension of noncitizens for unlawful entry and referral for criminal prosecution." Dkt. 38 at 30. But Plaintiffs do not challenge Defendant's purported decision to refer Marcos for prosecution. They challenge government employees' decisions to separate him from his eight-

year-old daughter for more than two months. Courts have rightly rejected Defendant's argument in other family-separation cases as based on "the false premise that by taking custody of children whose parents are 'amenable to prosecution,' the United States is simply enforcing federal law." *C.M.*, 2020 WL 1698191, at *4. As discussed below in the context of the due-care exception, Defendant cites to no federal law or regulation that required it to separate Marcos and Esteffany, nor does it explain why the CBP standard that requires the government to "maintain family unity to the greatest extent operationally feasible," Compl. ¶ 32, did not bar its employees' conduct.

Defendant does not attempt to distinguish the mandatory standards Plaintiffs cite governing conditions of immigration detention and detention of minors. *See* Compl. ¶¶ 26-34. Defendant cites an out-of-circuit case for the proposition that "government decision-making regarding conditions of confinement" is "'susceptible to policy analysis' and that the court 'must generally defer to the expertise of prison officials and is not to substitute its judgment for the consideration of such officials.'" Dkt. 38 at 34 (quoting *Peña Arita*, 470 F. Supp. 3d at 691). But the *Peña Arita* plaintiff had alleged that the government breached a specific duty "to provide medical care for inmates in federal custody," 470 F. Supp. 3d at 687—not that it had violated the various mandatory detention standards Plaintiffs have invoked here, which govern not just medical care but all sorts of other issues, including maintaining family unity, Compl. ¶¶ 26-36, 113, 130. And the plaintiff in *Peña Arita*, litigating in the Fifth Circuit, bore the burden on the discretionary-function exception, 470 F. Supp. 3d at 684, while Defendant bears the burden here, *Prescott*, 973 F.2d at 702.

        c.    *The conduct alleged in the Complaint is not susceptible to policy analysis.*

Even if binding guidance "did not apply to the circumstances here, or permitted [federal agents] to exercise discretion," the discretionary-function

exception would still not apply because Defendant's employees' decisions regarding Marcos and Esteffany's separation and treatment during that separation "cannot be said to be susceptible to policy analysis" under the second prong of the discretionary-function exception test. *Ruiz ex rel. E.R. v. United States*, No. 13-CV-1241 (KAM) (SMG), 2014 WL 4662241, at *8 (E.D.N.Y. Sept. 18, 2014). "It is not sufficient for the government merely to wa[]ve the flag of policy as a cover for anything and everything it does that is discretionary in nature." *Terbush v. United States*, 516 F.3d 1125, 1134 (9th Cir. 2008). Rather, Defendant must point to "reasonable support in the record for a court to find, without imposing its own conjecture, that a decision was policy-based or susceptible to policy analysis." *Marlys Bear Med. v. United States ex rel. Sec'y of Dep't of Interior*, 241 F.3d 1208, 1216 (9th Cir. 2001).

Defendant has not attempted to show that Plaintiffs' separation was grounded in public-policy considerations, instead relying on conclusory statements that certain conduct was "susceptible to policy analysis." Dkt. 38 at 30, 32. This is insufficient to carry Defendant's burden on the discretionary-function exception. *See C.D.A. v. United States*, No. 21-CV-469, 2023 WL 2666064, at *15 n.17 (E.D. Pa. Mar. 28, 2023) (United States would likely not satisfy step two of the discretionary-function exception analysis "[b]ecause many of the actions taken by Government employees against the plaintiffs were seemingly done so out of a sense of obligation to uphold and conform with immigration laws" and "it appears that public policy had not been much of a consideration"); *K.O. by & through E.O. v. United States*, No. CV 4:20-12015-TSH, 2023 WL 131411, at *8 (D. Mass. Jan. 9, 2023) (finding family separation was not susceptible to policy analysis as "the only conceivable reason for separating these families was 'the *in terrorem* effect it may have on others'") (quoting *D.J.C.V.*, 605 F. Supp. 3d at 596); *cf. Ruiz*, 2014 WL 4662241, at *8 (holding that CBP officers' decision to detain a four-year-old girl for 14 hours before contacting her parents and to provide her with only a cookie and

a soda over a 20-hour period could not "constitute a considered judgment grounded in social, economic, or political policies" and thus was not shielded by the discretionary-function exception). The Court should reject this argument.

### 3. The Due-Care Exception Does Not Preclude Any of Plaintiffs' Claims.

Defendant argues that Plaintiffs' claims are precluded by the due-care exception to the FTCA, which bars liability "based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." Dkt. 38 at 37 (quoting 28 U.S.C. § 2680(a)). The due-care exception applies if (1) a statute or regulation "specifically pr[e]scribes a course of action for an officer to follow," and (2) "the officer exercised due care in following the dictates of that statute or regulation." *Welch v. United States*, 409 F.3d 646, 652 (4th Cir. 2005); *see A.F.P.*, 2022 WL 2704570, at *14 ("Courts in the Ninth Circuit apply the two-prong test established by the decision in *Welch* . . . in determining whether the due care exception applies.").[5] The Motion fails to establish both prongs of this test.

*First*, Defendant identifies no statute or regulation that mandated Plaintiffs' separation upon arrival in the United States. Indeed, no such statute or regulation exists. Defendant relies on 8 U.S.C. § 1232(b)(3), Dkt. 38 at 38-39, but Section

---

[5] To the degree Defendant implies that the test is whether its employees acted "pursuant to and in furtherance of regulations," Dkt. 38 at 37-38 (quoting *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957)), or whether their actions were "authorized by statute or regulation," *id.* (quoting *Borquez v. United States*, 773 F.2d 1050, 1052 (9th Cir. 1985)), that is incorrect. *Borquez*, which was decided before *Welch*, says nothing about the due-care exception standard but instead held that plaintiffs could not use the FTCA as a means to challenge a statute's legality. 773 F.2d at 1052. To Plaintiffs' knowledge, every case within the Ninth Circuit to evaluate the applicability of the due-care exception to family-separation claims has applied the *Welch* test. *See, e.g.*, *A.F.P.*, 2022 WL 2704570, at *14 (citing cases from within and outside the family-separation context); *Nuñez Euceda*, 2021 WL 4895748, at *3 (same).

1232(b)(3) concerns the transfer of *unaccompanied* children. *See* 8 U.S.C.

§ 1232(b)(3) ("any department or agency of the Federal Government that has an

unaccompanied alien child in custody shall transfer the custody of such child to the

Secretary of Health and Human Services not later than 72 hours after determining

that such child is an unaccompanied alien child"). A child is "unaccompanied"

where "no parent or legal guardian in the United States is available to provide care

and physical custody." 6 U.S.C. § 279(g)(2)(C)(ii). Esteffany, of course, was not

"unaccompanied" *until Defendant forcibly separated her from her father*. Compl.

¶¶ 65-66; *see Jacinto-Castanon de Nolasco v. U.S. Immigr. & Customs Enf't*, 319

F. Supp. 3d 491, 495 n.2 (D.D.C. 2018) (children separated from parents "are not

true unaccompanied minors within the meaning of the statute; they were rendered

unaccompanied by the unilateral and likely unconstitutional actions of

defendants"). Defendant deflects again to its "discretionary decision to refer

[Marcos] for prosecution," Dkt. 38 at 39, but cites "no statute or regulation that

required the detention of [Marcos] in a different detention facility from

[Esteffany]," *A.F.P.*, 2022 WL 2704570, at *15. Defendant wholly "fails to explain

how a parent who is merely 'amenable' to prosecution—but has not been charged

with a crime—is for that reason unavailable to care for his child." *A.P.F. v. United*

*States*, 492 F. Supp. 3d 989, 995 n.3 (D. Ariz. 2020) (rejecting argument that

Section 1232(b)(3) required separation of parent and child when parent was

"amenable to prosecution" and declining to apply due-care exception); *see also*

*C.M.*, 2020 WL 1698191, at *3 & n.4.

   *Second*, Defendant does not even attempt to argue that its employees

exercised due care in implementing Section 1232(b)(3). "'Due care' implies at least

some minimal concern for the rights of others." *Hatahley v. United States*, 351 U.S.

173, 181 (1956) (quoting 28 U.S.C. § 2680(a)). Plaintiffs, on the other hand, have

alleged facts showing that Defendant displayed no concern for their rights.

Defendant's employees detained Plaintiffs in a cold, cramped room. Compl. ¶ 63.

They did not give them adequate food or drink or any bedding. *Id*. Defendant's employees separated Plaintiffs without any explanation as to why or how long they would be apart. *Id*. ¶ 65. Esteffany recalls one of Defendant's employees shouting at her and other recently separated children that if they did not stop crying, they would never see their parents again. *Id*. ¶ 81. Because Defendant points to no allegations in the Complaint demonstrating that it exercised even "minimal concern" for Plaintiffs' rights, *Hatahley*, 351 U.S. at 181, the due-care exception does not shield its conduct. *See A.F.P.*, 2022 WL 2704570, at *15 (finding that similar allegations "do not support a finding that due care was actually taken").

### 4.    A "Private Person Analogue" Exists for Plaintiffs' Allegations.

Defendant next argues that Plaintiffs' claims must be dismissed "because the challenged government actions have no private-person analogue." Dkt. 38 at 39. The FTCA waives the government's sovereign immunity in "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see also id*. § 2674 (the United States may be liable "in the same manner and to the same extent as a private individual under like circumstances"). Because "the federal government 'could never be exactly like a private actor,'" courts assessing whether a claim has a private-person analogue must "find the most reasonable analogy" from applicable state law. *Dugard v. United States*, 835 F.3d 915, 919 (9th Cir. 2016) (citation omitted); *see also Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992) (requiring "a persuasive analogy with private conduct" (citation omitted)).

Notably, Defendant does not even mention Texas law in making this argument. Instead, the Motion advances a theory long ago foreclosed by the Supreme Court, relies on inapposite cases, and disregards recent decisions finding a private-person analogue to other claims brought by separated families. Defendant

argues that "[b]ecause only the federal government has the authority to enforce federal criminal and immigration laws and make determinations concerning detention, there is no private person analogue that could support a claim under the FTCA." Dkt. 38 at 40. Again, Plaintiffs have not challenged Defendant's law-enforcement authority, but rather its tortious conduct in separating Plaintiffs and its treatment of them during that ten-week separation. Regardless, Defendant's argument merely restates one the Supreme Court rejected in 1955—that the FTCA "exclud[es] liability in the performance of activities which private persons do not perform" such that "there would be no liability for negligent performance of 'uniquely governmental functions.'" *Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955) (citation omitted). The Court held that because "all Government activity is inescapably 'uniquely governmental,'" the private-person analogue does not require "the presence of identical private activity." *Id.* at 67.[6]

Nor does Defendant attempt to distinguish Plaintiffs' allegations from private activity that would support state tort claims. *See Fuentes-Ortega*, 2022 WL 16924223, at *5 (rejecting systemic-tort defense where government did "not address any of the specific tort claims asserted by Plaintiffs in this case"). And as other courts have repeatedly recognized, Texas law provides private-person analogues for Plaintiffs' claims. *See A.F.P.*, 2022 WL 2704570, at *10 (holding that "[a] private person may be subject to liability under Texas law for IIED, abuse of process, and negligence in analogous circumstances" to family separation); *C.M.*, 2023 WL 3261612, at *20 (finding private-person analogue for family-separation allegations in "tort cause of action" under Texas law "for interruption of the parent-child relationship when someone abducts, entices away, or harbors a parent's minor

---

[6] Moreover, the FTCA expressly waives sovereign immunity from claims of abuse of process by federal investigative or law-enforcement officials. 28 U.S.C. § 2680(h). That statutory waiver would be rendered meaningless if the private-person analogue blocked all claims based on "uniquely governmental" investigative or law-enforcement activity.

child"); *D.A. v. United States*, No. EP-22-CV-00295-FM, 2023 WL 2619167, at *10 (W.D. Tex. Mar. 23, 2023) (same); *C.M.*, 2023 WL 3261612 at *19 (recognizing "duty of care owed by private nursing home personnel" under Texas law as "sufficient private person analog" to duty of care owed by immigration officials).

Instead, Defendant relies on cases with wholly different allegations than Plaintiffs', which of course lead to different conclusions regarding private-person analogues. For example, although courts have held that no private-person analogue exists when a complaint alleges that government officials breached a duty arising solely from a statute or regulation, Plaintiffs have alleged breach of well-established "common law principle[s]." *Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 536-37 (1st Cir. 1997) (cited at Dkt. 38 at 40). Cases involving allegations that government officials negligently adjudicated applications for immigration status are likewise irrelevant to Plaintiffs' allegations that Defendant's employees intentionally and negligently inflicted emotional distress and negligently caused physical, emotional, and economic injury by separating father and daughter. *See* Dkt. 38 at 40 (citing *Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018); *Elgamal v. United States*, No. CV-13-00867, 2015 WL 13648070, at *2-3 (D. Ariz. July 8, 2015); *Bhuiyan v. United States*, 772 F. App'x 564, 565 (9th Cir. 2019); *Mazur v. U.S. Immigr. & Naturalization Serv.*, 957 F. Supp. 1041, 1043 (N.D. Ill. 1997)).

For these reasons, the Court should reject Defendant's private-person-analogue argument.

**5.      Plaintiffs' Claims Are Not Barred by the Independent-Contractor Exception.**

Equally meritless is Defendant's argument that Plaintiffs' "allegations that [Esteffany] was not provided adequate and timely medical care and that she 'endured neglect' while in foster care are barred by the FTCA's independent

contractor's exception." Dkt. 38 at 41 (quoting Compl. ¶ 92). This exception does not shield the United States from liability "any time it hires an independent contractor." *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016). The United States remains liable "for its *own* acts or omissions." *Id.* at 518.

Plaintiffs allege that Esteffany received inadequate medical care and suffered severe emotional and physical distress while in ORR custody as a *direct result* of her separation from her father—conduct that was committed not by independent contractors but by government employees. Compl. ¶¶ 88-92; *id.* ¶¶ 115, 121, 131 (alleging Plaintiffs suffered harm as a "direct and proximate result" of Defendant's agents' conduct). As other courts have recognized, this is a question of causation that cannot be decided on a motion to dismiss. *See A.P.F.,* 492 F. Supp. 3d at 998 ("To the extent the United States argues that the contractors caused Plaintiffs' harm, and not the government, this raises a fact-intensive issue inappropriate for resolution at this stage."); *A.F.P.*, 2022 WL 2704570, at *18 (declining to dismiss claim based on independent-contractor exception where plaintiff alleged "that the government's conduct of forcibly separating plaintiffs was a direct and proximate cause of the harm suffered by plaintiff" while in a contractor-run facility for separated children).

Alternatively, a court considering the independent-contractor exception must "also determine whether Plaintiffs have alleged a separate nondelegable or undelegated duty, which the United States could be held directly liable for breaching." *Edison*, 822 F.3d at 518. Plaintiffs have alleged that Defendant owed them numerous duties of care arising from federal standards and tort law. Compl. ¶¶ 36, 112-13, 118, 130. Whether Defendant retained some portion of these duties in its arrangement with Cayuga Centers or whether they were undelegable "is a question of fact to be determined at trial." *Harvey v. United States*, No. 14-cv-1787 (PAC), 2017 WL 2954399, at *6 (S.D.N.Y. July 10, 2017).

Regardless, Plaintiffs have alleged that Esteffany suffered substantial harm

attributable solely to Defendant even while she was at Cayuga Centers—namely, the emotional harm and trauma of being forcibly separated from her father and the prolonged separation with scant communication. Compl. ¶¶ 10, 89, 92, 110; *see A.P.F.*, 492 F. Supp. 3d at 998. These allegations are not subject to the independent-contractor exception.[7]

**B.   Plaintiffs Have Sufficiently Alleged Their Claims**

   **1.   Defendant's Misconduct Was Not Privileged.**

   Defendant's argument that its conduct was "privileged under state law and federal immigration statutes" (Dkt. 38 at 43) is merely a rehashing of its discretionary-function and due-care arguments. It fails for the same reason those arguments fail, and for the additional reasons that (1) the Motion does not identify a specific privilege that would cover its employees' conduct, which is not surprising because (2) no government employee is privileged to commit constitutional violations or ignore federal law, as Plaintiffs have alleged occurred here.

   Defendant is correct that "[a]ctions that may otherwise subject a defendant to liability are not tortious if the conduct is privileged," at least in the Fifth Circuit.[8]

---

[7] The Motion makes a passing reference to the FTCA's exceptions for claims "'arising out of' misrepresentation or deceit" or "the detention of goods." Dkt. 38 at 42 (citing 28 U.S.C. §§ 2680(c), (h)). But Plaintiffs do not bring claims for misrepresentation, conversion, or anything remotely similar. To the degree Plaintiffs allege that federal officers misled Marcos about his right to seek asylum and failed to return his and Esteffany's belongings, Compl. ¶¶ 61-62, 70, these allegations are "only collaterally involved" with Plaintiffs' claims regarding their separation and thus cannot support either exception. *Mundy v. United States*, 983 F.2d 950, 953 (9th Cir. 1993) (reversing grant of motion to dismiss based on misrepresentation exception where allegation of misrepresentation did not "form[] the basis of" plaintiff's negligence claim).

[8] Plaintiffs are aware of no binding Ninth Circuit precedent regarding whether law-enforcement officers can invoke state and/or federal privileges in FTCA actions. The panel split on the question in *Tekle v. United States*, 511 F.3d 839 (9th Cir. 2007). *Compare id.* at 852 ("Holding federal law enforcement officials liable for torts committed while acting within the scope of the authority

Dkt. 38 at 44; *see Villafranca v. United States*, 587 F.3d 257, 264 (5th Cir. 2009) (holding that law-enforcement agents could invoke Texas's civil-privilege defense, codified at Tex. Penal Code § 9.51(a), in an FTCA case). But the Motion identifies no privilege that would cover the conduct alleged by Plaintiffs, and no such privilege exists. *See C.M.*, 2023 WL 3261612, at *45 (rejecting privilege argument because "[t]he Government has presented no state law privilege regarding the separation-based claims Plaintiffs pursue in this case"). All of the privilege cases Defendant cites applied an expressly identified privilege with an articulable relevance to the conduct at issue. *See Villafranca*, 587 F.3d at 261-65 (Tex. Penal Code § 9.51(a)); *Davila v. United States*, 713 F.3d 248, 261-62 (5th Cir. 2013) (same); *Saldaña v. United States*, 248 F.3d 1139, 1139 (5th Cir. 2001) (per curiam) (same); *Hernandez v. United States*, No. 1:17-CV-00087, 2018 WL 4103015, at *3-5 (S.D. Tex. July 2, 2018) (Tex. Transp. Code §§ 546.001-5); *Hinojosa v. City of Terrell, Tex.*, 834 F.2d 1223, 1231-32 (5th Cir. 2009) (Tex. Penal Code §§ 9.21-22, 9.51-52, and 46.03); *Garza v. United States*, 881 F. Supp. 1103, 1106-07 (S.D. Tex. Apr. 4, 1995) (same).[9]

---

granted to them does not bring the FTCA into conflict with the statute granting them such authority."), *with id.* at 859 (Fisher, J., concurring in judgment) ("[F]ederal officers should not be held liable under the FTCA if they are acting within the scope of a privilege conferred by another federal statute."), *and id.* at 862 (Kleinfeld, J., concurring in result) (stating that privilege issue was not properly before the court but, if it were, "I agree with Judge Fisher that the Federal Tort Claims Act does not expose federal law enforcement officers to liability when they are acting within the confines of the special law enforcement privileges conferred upon them by other statutes").

[9] The exception to this rule is *S.E.B.M. by and through Felipe v. United States*, No. 1:21-cv-00095-JHR-LF, 2023 WL 2383784, at *8 (D.N.M. Mar. 6, 2023), where the court held that the government's alleged actions were "protected by its privilege to prosecute," which the court noted was "akin to a private landowner's right [under New Mexico Law] to evict tenants who are behind on rent." But that court noted that prosecutorial discretion would not protect the government from liability for "conduct contrary to federal law," *id.*, such as the unconstitutional conduct Plaintiffs allege here. *See supra* at 10-11.

Defendant makes only the conclusory assertion that it "engaged in privileged conduct while enforcing existing federal criminal and immigration statutory authorities." Dkt. 38 at 44. The Motion cites no statutory privilege for this assertion. In fact, both of the authorities it cites *undercut* the idea that the conduct in this case was subject to any privilege. The Restatement of Torts notes that conduct that "would otherwise be extreme and outrageous, may be privileged" where the actor "has done no more than to insist upon his legal rights *in a permissible way*." Restatement (Second) of Torts § 46, cmt. g (2023) (emphasis added). This comment makes clear that a defendant's conduct is not shielded where it exceeds the bounds of the privilege. *See Villafranca*, 587 F.3d at 264 (evaluating privilege for "conduct of all peace officers who use *reasonable* force to effect an arrest" (emphasis added)); *Warren v. State*, 614 S.W.3d 441, 447 (Tex. App. 2020) (Section 9.51(a) privilege is subject to "rational limits," such as when "an officer uses more force than is reasonably necessary" and "exceeds [the officer's] statutory authority" (citation omitted)).[10] Plaintiffs allege that Defendant's employees cruelly and intentionally disregarded their basic human and constitutional rights by separating them for months, denying them regular contact with each other, and violating numerous mandatory standards for detention of migrants and minors. Such conduct exceeds the bounds of any privilege. *See C.D.A.*, 2023 WL 2666064, at *22 (rejecting identical privilege argument in family-separation case because "the Government cites no privileges relevant to [plaintiffs'] claims" and "the claims they *do* raise do not appear to contain elements that would grant comparable privileges to the Government employees whose conduct is in question in this

---

[10] The concurring opinions in *Tekle* assumed the same limitations on statutory privileges. *See* 511 F.3d at 857 (Fisher, J., concurring in judgment) (listing privileges that apply to law-enforcement officers "acting within *lawful* bounds applicable to such officers" (emphasis added)); *id.* at 862 (Kleinfeld, J., concurring in result) (agreeing with Judge Fisher's assessment of the privilege issue but declining to reach it).

1   case").

2       And while the Motion also cites *Caban v. United States*, 728 F.2d 68 (2d Cir.

3   1984), Dkt. 38 at 45, that case recognized that federal employees have "a privilege

4   to protect [U.S.] borders against unlawful entry" only where they "act[] in

5   conformance with the federal standards regarding treatment of applicants for entry

6   to the United States," 728 F.2d at 74. Plaintiffs do not challenge the Government's

7   decision to detain them. Rather, the Complaint alleges that Defendant's employees'

8   conduct did *not* conform to federal and constitutional standards. *See supra* at 9-13.

9       At its core, the Motion's privilege argument is merely a second stab at

10   discretionary-function and due-care arguments. Defendant argues that its

11   employees' conduct is privileged because it occurred "while enforcing existing

12   federal criminal and immigration statutory authorities" and "was carried out

13   pursuant to federal statutory authority." Dkt. 38 at 44-50. While the statutory- and

14   regulatory-authority question may be relevant to—though not determinative of—

15   the applicability of the discretionary-function and due-care exceptions, *see supra* at

16   9-17, it has no bearing on whether Defendant's conduct was subject to a specific

17   privilege under applicable state law. It was not, and the Court should reject this

18   argument.

19       **2.    Plaintiffs Have Sufficiently Pleaded Claims for IIED, Abuse of
             Process, and Negligence**

20

21           a.    *Intentional Infliction of Emotional Distress*

22       To state a claim for IIED under Texas law, Plaintiffs must show "1) the

23   defendant acted intentionally or recklessly, 2) the conduct was extreme and

24   outrageous, 3) the actions of the defendant caused the plaintiff emotional distress,

25   and 4) the emotional distress suffered by the plaintiff was severe." *D.A.*, 2023 WL

26   2619167, at *16 (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 620 (Tex. 1993)).

27   Multiple courts have held that allegations of family separation satisfy these

28   elements and state plausible claims for IIED under Texas law. *See, e.g., C.M.*, 2023

WL 3261612, at *47 (plaintiffs plausibly stated IIED claim where they alleged "that they were housed in a cold environment without adequate clothing or protection, subjected to verbal and physical abuse, fed lies about what would happen during their separation, and separated without contact"); *D.A.*, 2023 WL 2619167, at *16 (IIED claim plausible where plaintiff alleged "federal agents took her children away on short notice without giving her an opportunity to say goodbye, did not tell her where her children had been taken, and did not allow Plaintiffs to communicate for several weeks"); *C.D.A.*, 2023 WL 2666064, at *22 (holding on similar allegations that "a reasonable mind could find the Government's alleged conduct 'so outrageous in character or extreme in degree as to go beyond the bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community'" (quoting *Elliott v. Methodist Hosp.*, 54 S.W.3d 789, 796 (Tex. App. 2001)).

Defendant claims that its forced separation of a father from his daughter was neither "extreme nor outrageous," Dkt. 38 at 46, but the cases it cites for this proposition are wildly different both procedurally and factually. Neither initiating criminal proceedings against a shoplifter, *see Dillard Dep't Stores, Inc. v. Silva*, 106 S.W.3d 789, 797 (Tex. App. 2003) (reversing jury finding on IIED), nor discharging an employee, *see Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993) (affirming grant of summary judgment to employer on IIED), are akin to forcibly separating a father and his eight-year-old daughter and keeping them apart for months. Defendant also asserts that parent-child separation is "inherent" in immigration detention, Dkt. 38 at 46, but both of the First Circuit cases it cites in support involved substantive-due-process, not IIED, claims. *See Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 22 (1st Cir. 2007); *Payne-Barahona v. Gonzales*, 474 F.3d 1, 3 (1st Cir. 2007).

The Motion does not engage with Plaintiffs' specific allegations. These include allegations that Defendant's employees: separated Plaintiffs without any explanation as to why or how long they would be apart, Compl. ¶ 65; shouted at

Esteffany and other recently separated children that if they did not stop crying, they would never see their parents again, *id*. ¶ 81; failed to allow communication between Plaintiffs for weeks, *id*. ¶ 93; and kept Marcos and eight-year-old Esteffany apart for more than two months, *id*. ¶ 103. Nor does it mention Plaintiffs' allegations of the significant emotional trauma and physical injuries suffered as a result of Defendant's conduct. *Id*. ¶¶ 6, 69, 80, 90, 96. As multiple other courts have found, these facts are sufficient to plausibly state a claim for IIED. *See* C.M., 2023 WL 3261612, at *47; *D.A.*, 2023 WL 2619167, at *16; *C.D.A.*, 2023 WL 2666064, at *22.

b.   *Abuse of Process*

Abuse of process under Texas law "is the malicious use or misapplication of process in order to accomplish an ulterior purpose." *D.A.*, 2023 WL 2619167, at *17 (quoting *Hunt v. Baldwin*, 68 S.W.3d 117, 129 (Tex. App. 2001)). An abuse-of-process claim lies where "the original issuance of a legal process is justified" but "the process itself is subsequently used for a purpose for which it was not intended." *Id.* (quoting *Hunt*, 68 S.W.3d at 130). "To maintain a cause of action for abuse of process, it must be established that the process was improperly used *after* it was issued." *Hunt*, 68 S.W.3d at 130.

The Motion reframes Plaintiffs' argument as a challenge to Defendant's authority to "pursue criminal and removal proceedings against a noncitizen who entered the United States without inspection." Dkt. 38 at 47. That is not the basis for Plaintiffs' claim. Plaintiffs allege that, though "the original issuance of" this process was "justified," it was "subsequently used for a purpose for which it was not intended," *Hunt*, 68 S.W.3d at 130—namely, "inflicting emotional harm on Plaintiffs" and "deterring future migrants from seeking refuge in the United States," Compl. ¶¶ 124, 126. Plaintiffs also allege that federal officers abused the removal process to coerce Marcos into waiving certain rights, telling him that he would be reunited with Esteffany if he agreed to be deported rather than appeal his credible-

fear finding. *Id.* ¶¶ 78-79. Defendant's decisions, Plaintiffs allege, were "not required for any law enforcement purpose, as any intended prosecution could have been accomplished without a ten-week separation and without transporting Esteffany thousands of miles from her father to a placement in New York." *Id.* ¶ 125. Another court evaluating allegations that family separation was "a pretext to coerce [plaintiffs] into giving up their legitimate immigration claims" found that plaintiffs had plausibly stated an abuse-of-process claim under Texas law. *See D.A.*, 2023 WL 2619167, at *17.[11]

The Court should deny the Motion as to this claim.

        c.   *Negligence*

The Motion challenges Plaintiffs' negligence claim on two grounds: (1) that Marcos has alleged only "emotional" damages and has thus pleaded "an improper negligent infliction of emotional distress claim,"[12] Dkt. 38 at 47-48, and (2) that Plaintiffs have failed "to identify an applicable duty under Texas law," *id.* at 48. The argument fails on both fronts.

---

[11] Plaintiffs have also plausibly stated a claim under California law, which holds that "abuse of process arises when one uses the court's process for a purpose other than that for which the process was designed." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1056-57 (2006). A plaintiff must show that "the defendant (1) contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings." *Id.* Plaintiffs' allegations that Defendant's employees abused the removal and detention process to deter other migrants and coerce Marcos into waiving certain rights satisfy both prongs. *See, e.g.*, *Snyder & Assocs. Acquisitions LLC v. United States,* 859 F.3d 1152, 1161 (9th Cir.), *op. amended on reh'g sub nom.,* 868 F.3d 1048 (9th Cir. 2017) (allegations that "IRS issued subpoenas and revoked TTP's e-filing privileges to intimidate them and cause them to drop claims for a return of their funds" stated California claim for abuse of process).

[12] Plaintiffs do not dispute that "Texas does not recognize an independent cause of action for negligent infliction of emotional distress," *Garza*, 881 F. Supp. at 1108, and thus do not contest Defendant's Motion as to Count II. As discussed below, however, Texas law is clear that Plaintiffs may recover damages for "mental anguish" via their negligence claim.

1

                i.    *Plaintiffs have alleged that Marcos suffered economic and non-economic damages.*

2

3       *First*, Defendant ignores multiple allegations that Marcos suffered

4  dehydration, weakness, insomnia, and weight loss as a result of Defendant's

5  negligence. *See* Compl. ¶¶ 69, 80, 96. Texas courts recognize these kinds of

6  ailments as physical injuries sufficient to support damages for negligence. *See*

7  *HCRA of Tex., Inc. v. Johnston*, 178 S.W.3d 861, 870 (Tex. App. 2005) (upholding

8  jury award of damages for dehydration and malnutrition caused by nursing home's

9  negligence); *Rhodes v. Prince*, No. 3:05-CV-2343-D, 2009 WL 1885620, at *4

10  (N.D. Tex. July 1, 2009) (recognizing "inability to sleep [and] weight loss" as

11  injuries a reasonable jury could find were proximately caused by defendant's

12  negligence). The Motion dismisses Marcos's allegations of economic damages as

13  "stem[ming] from emotional harm," Dkt. 38 at 47, but cites no authority for the

14  idea that economic damages cannot arise from emotional harm. To the contrary, a

15  Texas Court of Appeals affirmed a jury award based in part on economic damages

16  stemming from Plaintiffs' inability to work because of panic attacks. *See Elo v.*

17  *Hurwitz Through Hurwitz*, No. 03-18-00776-CV, 2020 WL 1696809, at *5, 7-8

18  (Tex. App. Apr. 8, 2020). Plaintiffs have alleged that Marcos was unable to leave

19  his daughter's side, even to go to the store, for several months after their

20  reunification, preventing him from finding or sustaining a job. Compl.

21  ¶ 106. Marcos suffered insomnia, nightmares, flashbacks, anxiety, and depression,

22  all of which have physical manifestations that affected his ability to work. *Id.*

23  ¶¶ 106-07. Plaintiffs have sufficiently alleged that Marcos suffered physical and

24  economic damages.

25       *Second*, Plaintiffs may recover non-economic damages arising from

26  Defendant's negligence. The only case Defendant relies on to the contrary merely

27  held that a negligence claim does not lie where the alleged damages result not from

28  negligent conduct but from conduct underlying other, separately-pleaded claims.

*Garza*, 881 F. Supp. at 1108 (cited at Dkt. 38 at 47). Under Texas law, "mental anguish" damages are available in numerous circumstances, including where the damage was caused "by a particularly upsetting or disturbing event," where "the plaintiff establishes 'intent or malice on the defendant's part,'" and where "a special relationship between the two parties" exists. *SCI Tex. Funeral Servs., Inc. v. Nelson*, 540 S.W.3d 539, 543-44 (Tex. 2018) (citation omitted). That list is "not exhaustive." *Id.*

All of those circumstances are alleged here. For a father and his eight-year-old daughter to be torn away from each other, mistreated for months in detention (Marcos) and housed in a small apartment with seven other separated children (Esteffany), and given little to no information about when they would be reunited certainly qualifies as a "particularly upsetting or disturbing event." Compl. ¶¶ 60-80, 86, 93-97. Plaintiffs have also alleged, citing statements in public documents, that Defendant's employees intentionally and maliciously separated families in order to inflict trauma as a deterrent to other migrants. *Id.* ¶¶ 38-44. And, as explained below, Plaintiffs have alleged that a "special relationship" exists between federal immigration officials and detained families. These allegations are sufficient to state a claim for mental-anguish damages under Texas law. *C.M.*, 2023 WL 3261612, at *47.

ii.   *Plaintiffs alleged a number of specific duties that Defendant breached.*

Defendant's assertion that "Plaintiffs have not identified any duty under Texas law requiring the government to keep them together" (Dkt. 38 at 49) ignores five distinct duties alleged in the complaint:

> (1) the *Flores* settlement agreement standards for the treatment of minors, including food, drink, hygiene, sanitation, temperature, supervision, safety, medical assistance, contact with family members, and respect and special concern for their particular vulnerability as minors; (2) ORR's obligation to place a child in the least restrictive setting that is in the best interests of the child;

1
2
3
4

> (3) CBP's TEDS standards governing food, drink, hygiene, bedding, temperature, documentation, and respect for family unity; (4) ICE's PBNDS, requiring humane conditions when detaining migrants; and (5) the fundamental right to family integrity under the U.S. constitution, including, but not limited to, Plaintiffs' rights to due process under the Fourteenth Amendment.

5 Compl. ¶ 113; *see also id.* ¶¶ 26-36; *id.* ¶¶ 129-30 (incorporating these allegations

6 into negligence claim). These allegations are sufficient to establish the duty element

7 of a negligence claim. *See C.M.*, 2023 WL 3261612, at *5-8, 47 (discussing many

8 of these standards as background and holding that plaintiffs had plausibly pleaded

9 negligence claim "grounded in a breach of the duty owed by federal agents to

10 persons in their care").

11    Even in the absence of these enumerated duties, Texas courts have long

12 recognized that a sheriff and her deputies owe inmates a reasonable duty of

13 protection from foreseeable harm. *Browning v. Graves*, 152 S.W.2d 515, 518 (Tex.

14 Civ. App. 1941); *see also Salazar v. Collins*, 255 S.W.3d 191, 200 (Tex. App.

15 2008) (reexamining *Browning* and finding it consistent with "a significant majority

16 of courts in other states [that] have likewise concluded that prison or jail officials

17 owe a duty of reasonable care to protect inmates from harm when that harm is

18 reasonably foreseeable"). Courts have referenced a similar duty in evaluating

19 whether an FTCA claim arising from family separation has a private-person

20 analogue. *See Nuñez Euceda*, 2021 WL 4895748, at *4 ("Courts in this Circuit also

21 recognize negligence claims brought under the FTCA where, as here, a prisoner

22 alleges an agent negligently placed him in a certain cell."); *C.M.*, 2020 WL

23 1698191, at *2 (relying on same analogy).

24    Both cases the Motion cites in support of its argument that no relevant duty

25 existed (Dkt. 38 at 49) involved a detainee or prisoner who wished to be transferred

26 to another facility but had not alleged that he would suffer any harm absent a

27 transfer. *See Rathod v. Barr*, No. 1:20-cv-161, 2020 WL 1492790, at *5 (W.D. La.

28 Mar. 5, 2020); *Davis v. Carlson*, 837 F.2d 1318, 1319 (5th Cir. 1988) (prisoner's

wife requested he be transferred closer to her home). This is an entirely different set of facts than the duty not to traumatically separate an eight-year-old girl and her father, alone in a country where they did not speak the language, who wished only to remain together as they navigated what might come. Defendant owed them that.

## V.     CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court deny the Motion.


Dated: July 26, 2023                    **O'MELVENY & MYERS LLP**


By:  /s/ *Geoffrey H. Yost*
Geoffrey H. Yost (S.B. #159687)
L. Nicole Allan (S.B. #323506)
Taylor S. Simeone (S.B. #327313)
Monsura A. Sirajee (S.B. #320704)
Emily Murphy*
Hye-Jin Kim (S.B. #341948)

Dated: July 26, 2023                    **KIDS IN NEED OF DEFENSE (KIND)**


By:  /s/ *Wendy Wylegala*
Wendy Wylegala*
Esther Araya*
John Travis (S.B. #348813)


*Attorneys for Plaintiffs M.A.N.H. and E.B.N.A., a minor child*
[*Admitted pro hac vice*]

**CERTIFICATE OF COMPLIANCE [L.R. 11-6.2]**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains no more than 35 pages, which complies with the page limit set by court order dated June 28, 2023, Dkt. 39.

Dated: July 26, 2023

/s/ *Geoffrey H. Yost*　
Geoffrey H. Yost
**O'MELVENY & MYERS LLP**
*Attorney for Plaintiffs*

- 32 -